### No. 39,823

DR. MANUEL M. MARKS, *Appellant*, v. DR. WAYNE E. FRANTZ, DR. J. C. RUST, DR. EDWIN C. CATHERS, individually and as members of the Kansas State Board of Examiners in Optometry and WENDELL D. WALDIE, DEAN L. BABB and WARNER MOORE, *Appellees*.

(298 P. 2d 816)

Opinion filed June 9, 1956.

*W. A. Kahrs,* of Wichita, argued the cause, and *Robert H. Nelson, Wilbur D. Geeding,* and *Julian H. Zimmerman,* all of Wichita, were with him on the briefs for the appellant.

*Wendell L. Garlinghouse,* of Topeka, argued the cause, and *Dale M. Bryant,* and *Glenn J. Shanahan,* both of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action in which the plaintiff sought a determination that G. S. 1949, Ch. 74, Art. 15, creating the board of examiners in optometry and G. S. 1949, Ch. 65, Art. 15, providing for the examination and registration of optometrists, with amendments thereto, be declared unconstitutional and void and that pending a determination the defendants be restrained from proceeding with a hearing by the board on a complaint seeking revocation of his certificate of registration as an optometrist, and upon final hearing, for a permanent injunction. At the time the petition was filed the district court made its order restraining the defendants from prosecuting plaintiff on the charges brought until further order of the court.

The defendants demurred to the petition on three grounds, that: (1) the petition did not state facts sufficient to constitute a cause of action; (2) several causes of action were improperly joined; and (3) the petition was not drawn upon a single and definite theory and there was such a confusion of theories it was impossible to determine upon which of several theories relief was sought. The court heard the demurrer and on January 7, 1955, sustained it as to ground 1 and overruled it as to grounds 2 and 3, and dissolved the restraining order issued on June 25, 1954.

On January 13, 1955, plaintiff served his notice of appeal to this court from the rulings adverse to him, and on the same day applied to the district court for a stay and an order fixing bond, as a result of which the trial court found the order of June 25, 1954, was in effect a temporary injunction, and it fixed a bond, terms of which need not be noted, and ordered the temporary injunction of June 25, 1954, remain in force until plaintiff's appeal be determined. Appellant's specifications of error are sufficient to cover his contentions later discussed.

We note that the defendants served notice of cross-appeal from the rulings adverse to them, but in their brief they make no contention and present no argument with respect to such rulings, and we therefore consider the cross-appeal as abandoned.

It appears from the petition and exhibits attached thereto that on or before June 10, 1954, an amended complaint was made by Waldie and Babb to the board of examiners in optometry charging, in substance, that plaintiff Marks: (1) had practiced optometry in an unethical manner; (2) was guilty of grossly unprofessional conduct of a nature likely to deceive or defraud the public; (3) had an arrangement with Zale's Jewelers to collect his accounts, and with Dr. Ellis Carp, not licensed to practice optometry within this state, and such arrangement was unlawful and unethical; (4) had committed acts for which the board might refuse to admit him as a candidate to its examination; (5) had caused and permitted advertisements, details of which will not be set forth; and (6) had failed and refused to notify the board of the place or places where he engaged or intended to engage in the practice of optometry, in violation of the laws of Kansas, particularly G. S. 1949, 65-1509, and asking that Marks' certificate of registration be revoked.

Under date of June 10, 1954, a copy of the complaint was served on Marks and he was advised in writing that he had ten days to file his answer, and that he was entitled to a public hearing, an opportunity to produce testimony and to confront witnesses against him and that the hearing would be held in the Sedgwick county district court room on July 8, 1954.

The instant action was commenced on June 25, 1954, by Marks. The petition is lengthy and must be summarized.

In his petition Marks alleged he practices the "quasi-profession" of optometry in Wichita; that defendants Frantz, Cathers and Rust are members of the board of examiners in optometry and also

members of the Kansas Optometric Association, a corporation; that other defendants reside in Wichita; that defendants Waldie and Babb, members of the Kansas Optometric Association, filed the complaint against plaintiff and pursuant thereto, Rust, without authority, directed a letter to plaintiff enclosing a copy of the complaint and informed plaintiff of the hearing thereon on July 8, 1954. Plaintiff then alleged that G. S. 1949, Ch. 74, Art. 15, and Ch. 65, Art. 15, and supplements thereto, were unconstitutional and void, and any complaint filed with the board of examiners in optometry was without force for the following reasons: (A) Under the state constitution the governor is empowered to see that the laws are faithfully executed, and the legislature cannot delegate its powers to the governor or to any board and cannot usurp the constitutional power of the executive; that in creating the defendant board the legislature in fact delegated legislative powers to the governor and directed that the governor appoint specified individuals to carry out the act, which legislation usurped the power extended to the governor under the constitution; that the legislature in directing the governor to appoint members of the board from a list of names supplied him by the Kansas Optometric Association, a corporation, in fact delegated legislative authority to a corporation in violation of the state constitution, and as a result, the board thus created is unlawfully controlled by the above association to the detriment of plaintiff and all optometrists practicing in competition with the members of that association; (B) The above acts are unconstitutional for the reason that said acts require that every optometrist, before securing renewal of his certificate to practice, must furnish evidence to the board that he attended at least two days of the annual education program of the association or its equivalent, and that such requirement is unconstitutional for the reason the legislature has failed to provide a course of study and in lieu has delegated the power to the association and has placed in it the authority to determine the program to be followed. Other allegations in expansion of the above are not summarized. Plaintiff further alleged that the optometry act unlawfully delegates to the board the authority to prescribe a code of ethics for optometrists, but provides no standards to govern the board in establishing a code and is therefore an abuse of legislative authority and discriminatory between optometrists who are and are not members of the above association, and unconstitutional. Plaintiff also alleged that an

optometrist is a quasi-professional and also an artisan merchant, and optometry is not a learned profession and subject to a code of ethics and any attempt by the legislature to provide for a code is unwarranted and under the circumstances unconstitutional. Plaintiff also alleged at length that the act creating the board does not provide the manner in which a complaint is to be made or who may prefer charges and that Waldie and Babb had no authority to make complaint; that prior to 1953 the board had adopted rules under G. S. 1949, 74-1504, and that section had been repealed, and the rules theretofore adopted became a nullity; that the board had no authority to make rules and, in any event, had made no rules for the conduct and procedure of the board for government of applicants for registration, and that the complaint was not authorized by any statute or rule; that the acts charged against plaintiff do not violate the act or the repealed regulations. Other allegations may be said to be variations of the above. We need not note allegations as to plaintiff's right to practice as a valuable property right which will be imperiled by a hearing of the charge even though he should be acquited.

As has been noted defendants' demurrer on the ground facts sufficient to constitute a cause of action were not alleged was sustained and plaintiff appealed.

In a preliminary way we note appellees' contention that courts may not interfere with administrative agencies and boards in the lawful performance of their duties and substitute the court's judgment for that of the administrative tribunal and that such tribunals should not be enjoined from performing their duties, in support of which they quote appropriate language from *Kansas City v. Utilities Commission*, 103 Kan. 473, 176 Pac. 324; *Kansas Gas & Electric Co. v. Public Service Com.*, 122 Kan. 462, 251 Pac. 1097; and *Bohl v. Teall*, 155 Kan. 505, 126 P. 2d 216. The cited cases need not be reviewed for they support the general contention made. In our opinion, however, they are not decisive here. The same general contention was made in *Butler v. Rude*, 162 Kan. 588, 178 P. 2d 261, where the plaintiffs sought to enjoin enforcement of a rule of the state board of embalming on the ground the board was without power to adopt the rule. After reviewing other decisions of like import and *Bohl v. Teall*, supra, this court held they did not control as the challenge was not to the rules generally but to the board's power and authority to make the particular rule attacked, and that

the plaintiffs could maintain the action. We think that, by analogy, the decision controls here where the challenge is to the constitutionality of the statute creating the defendant board. If the statute be declared unconstitutional, there would be no board and anything it did would be a nullity.

Before taking up appellant's contentions, we take note of established principles applicable where constitutionality of a statute is to be determined. Constitutionality of a statute is presumed, doubts as to constitutionality are resolved in favor of legality, and before the statute may be stricken down, it must clearly appear the statute offends. (See, e. g., *Carolene Products Co. v. Mohler,* 152 Kan. 2, 102 P. 2d 1044; *Board of County Comm'rs v. Robb,* 166 Kan. 122, 199 P. 2d 530; *State, ex rel., v. Board of Regents,* 167 Kan. 587, 207 P. 2d 373, and cases cited therein.) In determining constitutionality of a statute the court's duty is to uphold the legislation rather than defeat it and if there is any reasonable way to construe the legislation as constitutionally valid that should be done. (See e. g., *Mizer v. Kansas Bostwick Irrigation District,* 172 Kan. 157, 239 P. 2d 370.) It is further to be noted that constitutionality of legislation will be considered only where necessarily involved and such a determination required (See, e. g., *State, ex rel., v. School District,* 163 Kan. 650, 185 P. 2d 677), and that constitutionality may not be questioned by one not affected by its operation. (See, e. g., *Kansas Utilities Co. v. City of Burlington,* 141 Kan. 926, 931, 44 P. 2d 223; *Stone v. City of Wichita,* 145 Kan. 377, 65 P. 2d 595.) With respect to the last rule, it may be observed that under the complaint filed with the board, the appellant is charged with certain acts. Insofar as they are concerned he may question constitutionality of the statute involved—but under that rule he has no standing to attack the act as an entirety and respecting those phases of it which are not involved in the charges against him and by way of illustration we mention attendance at the educational programs as outlined in his petition.

We note also that in his brief appellant presents two questions, one that G. S. 1949, 65-1504 (*i*) is an unconstitutional delegation of legislative power, the other that G. S. 1949, 74-1501, *et seq.,* is unconstitutional as delegating powers of government to a private corporation. The two questions are separately discussed by him. Appellees contend that the two statutes are *in pari materia* and should be construed together. We note that the optometry act was originally enacted as Laws 1923, Ch. 220, and covered the field.

The division into chapter, article and section numbers in the Revised Statutes of 1923 and subsequent compilations of our statutes did not have the effect of making two separate statutes. We consider Ch. 65, Art. 15, and Ch. 74, Art. 15, as one act.

Discussion of appellant's contentions does not require an exhaustive review of the statute under attack. In particulars it has been amended since publication in the General Statutes of 1949. We shall refer hereafter to chapter and section number as presently existing but shall not note whether they appear in the General Statutes or in the 1955 Supplement. As referred to hereafter they were in effect prior to the time the complaint was filed. Under 74-1501 the governor appoints a board of examiners in optometry consisting of three members "to be selected from a list of four names for each appointment, submitted by the Kansas optometric association, or its successor." No person shall be eligible for appointment unless he has been engaged in the actual practice of optometry in Kansas continuously for five years last past. Under 74-1504 the board is empowered to enforce the act and is given specific powers which need not be reviewed fully here but which include, (e) to grant certificates of registration, and to revoke certificates for any causes specified in 65-1504, (f) to administer oaths and take testimony upon granting or revoking certificates, (h) to make rules and regulations for the procedure and conduct of the board and for the conduct and government of applicants for certificates of registration and licensed and registered optometrists, and "to prescribe a code of ethics for optometrists practicing within this state, which said rules, regulations and code of ethics shall not be inconsistent with the provisions of this act."

Under 65-1504 unlawful acts are defined as including (a) sale of any certificate of registration, (b) purchase of any certificate, (c) alteration of a certificate, (d) use of a fraudulently issued, counterfeited or altered certificate, (e) practicing optometry under a false or assumed name or as a representative or agent of any person, (f) false statements in regard to an application before the board or for a certificate of registration, (g) practicing optometry without having a valid unrevoked certificate, (h) bartering or giving away glasses, spectacles, lenses or frames as presents "or (i) to practice optometry in any unethical manner."

Under 65-1504a, it is unlawful for any person duly licensed to (a) give away as premiums any glasses, spectacles, lenses or frames, (b)

to test eyes and fit glasses "in any unethical manner," or (c) to advertise in any manner or form in an attempt to deceive the public.

Under 65-1504b, it is unlawful for any person to dispense an ophthalmic lense or lenses without having obtained a prescription or order from a licensed optometrist or other person legally permitted to test eyes and fit glasses.

Under 65-1506, a certificate of registration may be revoked for thirteen specified reasons, and included therein are (c) any grossly unprofessional conduct of a nature likely to defraud or deceive the public, (g) the employment of any unregistered person to perform work covered by the act, (l) any cause for which the optometry board might refuse to admit a candidate to examination, and (m) for violations of any provisions of the optometry law.

Under 65-1511, it is provided that if any paragraph or provision of the act shall be held unconstitutional, the same shall not affect any other paragraph or provision of the act.

Appellant's first contention of unconstitutionality is limited solely to G. S. 1949, 65-1504 (i). This subsection provides that it shall be unlawful for any person "(i) to practice optometry in any unethical manner." The contention is that the quoted language is unconstitutional for the reason it fails to fix any standard or define with any clarity and exactness the term "unethical manner"; that legislative power is vested in the house of representatives and senate (Constitution, Art. 2, Sec. 1) and cannot be delegated (*Oakland State Bank v. Bolin,* 141 Kan. 126, 40 P. 2d 437); that while the legislature possesses all the legislative power of the state, it may enact general provisions and leave those who are to act thereunder to use discretion to fill up the details, but such discretion may not be granted where the legislature has not expressly enacted all the outlines (*Coleman v. Newby,* 7 Kan. 82; *State, ex rel., v. City of Topeka,* 176 Kan. 240, 270 P. 2d 270), and if the legislature does not fix standards with reasonable clarity and exactness, the delegation is unconstitutional (*State, ex rel., v. Hines,* 163 Kan. 300, 182 P. 2d 865; *Johnston v. City of Coffeyville,* 175 Kan. 357, 264 P. 2d 474; and *State, ex rel., v. Kansas Turnpike Authority,* 176 Kan. 683, 273 P. 2d 198). It is further contended that sections 65-1504, 1504a and 1504b are penal and wholly unrelated to other portions of the act and 65-1504 does not define "unethical manner" or in any way limit the phrase to a specific class of conduct, and it is argued that no optometrist could read the last section and know by reading it what

acts or manner of practice would offend the section or would be considered by the optometry board as a violation, that "unethical manner" is so indefinite its meaning is uncertain and therefore 65-1504 (*i*) violates the constitution and should be stricken down.

Answering the above argument, it may be observed the statute contains a separability clause and even though we agreed with the appellant that subdivision (*i*) of 65-1504 is unconstitutional, the remainder of the act stands. Appellant is charged, not in a criminal action, but in a proceeding to revoke his certificate of registration under portions of the statute not under attack, and he would not be entitled to injunctive relief.

In our opinion, however, the appellant's contention cannot be sustained. Constitutionality is not to be determined by isolating from context, one subparagraph of one section of an entire act. Bearing in mind the rules of statutory construction above mentioned, it is our duty to examine the statute and, if possible, to construe it so as to uphold it. Under 65-1506, the board is empowered to revoke a certificate of registration for thirteen specified reasons, the last of which is "For the violations of any of the provisions of this act." Under 74-1504 (*e*), the board is empowered to revoke a certificate for the violation of 65-1504, and under 74-1504 (*h*), the board has power to adopt a code of ethics, but whether it has done so, or if it has, whether that code is a proper one under the authority granted, is not disclosed by the petition. We shall here confine our attention to 65-1504 heretofore summarized which provides that it shall be unlawful for any person to commit nine specific acts, the last of which is "to practice optometry in any unethical manner", and ignore for present purposes other sections which have a bearing thereon.

Although appellant argues that the case is distinguishable from the one at bar we note that in *Richardson v. Simpson*, 88 Kan. 684, 129 Pac. 1128, the action was one to enjoin enforcement of an order of the state board of dental examiners revoking the plaintiff's license. The complaint there charged the plaintiff with obtaining money by false pretenses and of dishonorable conduct. In this court the plaintiff contended that the portion of the statute warranting revocation of a dentist's license for "dishonorable conduct" was unconstitutional and void because too indefinite to be made the basis for action. Reference is made to that opinion for the comment and citations of authorities leading to the holding in the third paragraph of the syllabus which reads:

"In a statute authorizing the revocation of a dentist's license for specific offenses, the additional phrase 'or for any other dishonorable conduct' is not void for indefiniteness."

In our opinion the question presented in the instant case is analogous to that considered in the Richardson case, *supra*, and the principle there stated should apply here, and that we should and we do hold that the term "unethical manner" as used in subparagraph (*i*) of 65-1504 means conduct of the same general conduct as that specified in the preceding subparagraphs of that section.

Although more broadly stated, the gist of appellant's second contention of unconstitutionality is that under 74-1501 the governor must appoint the members of the board of examiners in optometry to be selected from a list of four names for each appointment submitted by the Kansas optometric association, and that such a provision deprives the governor of his power of determination and appointment and confers it on the optometric association, which appellant says is a private corporation, although that does not appear from the statute.

Directing attention to Art. 15, Sec. 1, of our constitution that all officers whose election or appointment is not otherwise provided by the constitution shall be chosen or appointed as may be prescribed by law, he states whether that constitutional provision authorizes the legislature to delegate the power of appointment of public officers to a private corporation has never been decided by this court, and he cites definitions of public officers, which we need not review as we are of the opinion that members of the board are public officers, and to authorities that the power of appointment is a sovereign power, and argues that being a sovereign power, it may not be delegated to a private corporation and that requiring the governor to appoint from a list submitted to him by a private corporation is equivalent to conferring that power on the private corporation.

Appellant directs attention to *State ex inf. v. Washburn*, 167 Mo. 680, 67 S. W. 592, decided by a divided court, where it was held that a statute requiring the governor to appoint as members of an election commission from lists of names submitted by party central committees was, although the power to the committee was not literally a power to appoint, designations that led to an appointment, and considering the statute as conferring such power, for that was its effect, it was unconstitutional. He also directs attention to *Westlake v. Merritt*, 85 Fla. 28, 95 So. 662, where, by a divided court,

it was held that a provision of a statute requiring the governor to appoint the members of the Board of Chiropractic Examiners from a list of names submitted by the Florida Chiropractic Association, a private corporation, was in effect that the Association selected and the governor merely ratified; that it was apparent the appointing power of the governor was limited and his choice made under the circumstances was not an exercise by him of his exclusive rights of appointment. That court cited *State ex inf. v. Washburn*, supra, in support of its contention. It may be noted without further comment that the two cases noted support appellant's contention. Appellant also directs attention to *The State v. Crawford*, 104 Kan. 141, 177 Pac. 360, where defendants were being prosecuted under a clause of a statute compelling electric wiring "shall be in accordance with the national electrical code." In the opinion it was said that the power to make, amend, alter and repeal laws was in the legislature and it could not abdicate its functions and delegate its powers to any other body, and, omitting the discussion, the court held the clause was void.

Appellant also directs attention to our constitution as vesting executive power in a governor, legislative power in a house of representatives and senate, and judicial power in the supreme court and inferior courts, and to *Coleman v. Nemby*, supra, that these three branches include all of the delegated power of the government, and having been delegated by the people of the state to their respective departments, cannot again be delegated by the department to which it belongs. In extending his argument, appellant also cites and quotes at some length from *Tucker v. State*, 218 Ind. 614, 35 N. E. 2d 270, and *State ex inf. v. Washburn*, supra.

The appellee board's answer to the above contention and its argument that the provision for appointment under attack do not afford any basis for declaring the provision unconstitutional is extended and must be stated summarily. The board contends that the question actually concerns the power of the legislature to provide for boards and officers and the manner of their appointment and selection; that our constitution restricts and does not grant power and the legislature except as restricted by the constitution is free to act (*Jansky v. Baldwin*, 120 Kan. 332, 243 Pac. 302); that the legislature has power to regulate optometry and provide a board for that purpose, and that none of the powers conferred on that board are authorized by the constitution to be performed by another

person, officer and board (*Ratcliff v. Stock-yards Co.*, 74 Kan. 1, 86 Pac. 150; *The State v. Railway Co.*, 76 Kan. 467, 92 Pac. 606), and directing attention to the constitutional provision as to legislative power (Art. 2, Sec. 1) and to the power of the legislature to provide for the election or appointment of all officers not otherwise provided for in the constitution, cites and quotes at length from *Sartin v. Snell*, 87 Kan. 485, 125 Pac. 47, wherein may be found a considerable discussion as to the power of appointment and its exercise in instances, to which reference is made.

Our constitution does provide for certain appointments to public office by the governor, but it makes no provision whatever as to the defendant board other than as provided in Art. 15, Sec. 1, which reads that "All officers whose election or appointment is not otherwise provided for, shall be chosen or appointed as may be prescribed by law." There is no constitutional limitation on who may be appointed, nor any constitutional restriction on the legislature exercising its power as it shall see fit. As a matter of fact the legislature has provided a restricted power of appointment in many instances. Examples of restrictive appointments to specified boards may be found in the following: state board of agriculture, by G. S. 1949, 74-501, and G. S. 1955 Supp., 74-502 and 503; state entomological commission, by G. S. 1949, 74-512; board of nurse registration and nursing education, by G. S. 1949, 74-1106; board of osteopathic examination and registration, by G. S. 1949, 74-1201; board of pharmacy, by G. S. 1955 Supp., 74-1603, 1604 and 1605; board of embalming, by G. S. 1949, 74-1701; and Kansas livestock commission and its president, by G. S. 1949, 74-4001 and 75-1901. Other statutes, which need not be cited, provide for appointments either by officers other than the governor or by legislative appointment. It is noted that the constitutionality of the above mentioned statutes has never been questioned except as hereafter stated and they are noted only to direct attention to what seems to be a settled legislative pattern. See discussion in *State, ex rel., v. Kansas Turnpike Authority*, 176 Kan. 683, 273 P. 2d 198, as to power of the legislature to make two of its members ex-officio members of the Authority.

Some analogy may be derived from *Goodrich v. Mitchell*, 68 Kan. 765, 75 Pac. 1034, where it was contended that a veteran's preference law was unconstitutional. In that case it was said:

"The general doctrine is that, in the absence of constitutional limitations,

the legislature may prescribe how and by whom offices shall be filled." (l. c. 768.)

". . . Our constitution differs materially from those of many of the states with respect to the granting of privileges. The only provision we have touching the subject is found in section 2 of the bill of rights, which is:

" 'All political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit. No special privileges or immunities shall ever be granted by the legislature, which may not be altered, revoked or repealed by the same body; and this power shall be exercised by no other tribunal or agency.'

"In most of the states the granting of special privileges or immunities is expressly prohibited; but, as will be observed, ours seemingly contemplates that such privileges may be granted, as it provides that none shall be granted that may not be altered, revoked, or repealed. The legislature may, then, exercise its judgment and discretion in the selection of officers, unhampered by restrictions, unless some are to be implied from those expressed or from the theory of our government." (l. c. 769.)

"Nor is there any novelty in our legislation on the subject, as like preferences have been given by the legislatures of a great many states and by the congress of the United States, and, except where the acts have been drawn so as to conflict with express constitutional provisions, they have been generally upheld." (l. c. 770.)

The precise question as to the power of the legislature to restrict appointment to office to one belonging to a particular body or organization has not been before this court, but it has been before the supreme or appellate courts of other states.

In *Bradley v. Board of Zoning Adjustment,* 255 Mass. 160, 150 N. E. 892, the court considered an act providing for a board of twelve to be appointed by the mayor of Boston, one from a list of two to be nominated by the chambers of commerce, and others from lists nominated by other organizations. The court in upholding constitutionality noted that *State ex inf. v. Washburn,* supra, and *Lasher v. The People,* 183 Ill. 226, 55 N. E. 663, were to the contrary, but said its conclusion of constitutionality was supported by the great weight of authority, and in addition to its own cases, cited others from New York, Maryland, Louisiana, California, Minnesota and Ohio.

In *Elrod v. Willis, Governor,* 305 Ky. 225, 203 S. W. 2d 18, it was held that a statute requiring the governor to appoint members of Disabled Ex-Servicemen's Board from a list submitted by the American Legion was not unconstitutional.

In *Miller v. El Paso County* (Texas Civ. Appeals), 146 S. W. 2d

1027, the court considered among other matters constitutionality of a statute which provided for a board of county development of five members two of whom were to be appointed by the commissioners' court and three of whom were to be appointed by the board of directors of the chamber of commerce of the county seat. Referring to *State ex inf. v. Washburn,* supra, the court said:

"The decision in this case was by a divided court. It must be conceded that there is a division of authority on the proposition. The practice in this State seems to have been somewhat at variance with the doctrine laid down in the Missouri case." (l. c. 1034.)

After further discussion, the court said further:

"In several cases in jurisdictions other than ours the legality of the delegation of the power of nomination and appointment to nonofficial bodies has been recognized. 46 Corpus Juris, pp. 950, 951; McCurdy v. Jessop, 126 Md. 318, 95 A. 37; In re Bulger, 45 Cal. 553; Overshiner v. State, 156 Ind. 187, 59 N. E. 468, 51 L. R. A. 748, 83 Am. St. Rep. 187; State v. Sowards, 64 Okl. Cr. 430, 82 P. 2d 324; Bradley v. Board of Zoning Adjustment, 255 Mass. 160, 150 N. E. 892.

"In principle we can see little difference in confiding the power of appointment to an office other than the executive department and confiding it to an official body." (l. c. 1035.)

The court concluded the statute was not unconstitutional.

We have examined many authorities cited in the briefs and not mentioned above, but bearing in mind our constitutional provision as to the power of the legislature to prescribe for the filling of vacancies in public office, the general trend of our legislation thereon, and analogies drawn from our cited cases, and in accord with what we deem to be the clear weight of authority in other jurisdictions, we hold that the statute providing for the appointment of the members of the board of examiners in optometry is not unconstitutional.

Heretofore in this opinion we have set out at considerable length the complaint filed before the board and against the appellant, the details of his allegations and the statutes involved. We think it clear that appellant is not charged with failing to attend the educational programs of which he complains. Under decisions previously cited, constitutionality of the parts of the act dealing with the educational program need not and will not be discussed. Neither need we discuss the power of the board to adopt a code of ethics, nor what it may contain. There is no allegation such a code was ever adopted or if it was, that appellant violated it.

In our opinion the allegations of the petition did not disclose facts which would warrant a court in interfering with the defendant

board in the lawful performance of its duties, and the trial court did not err in sustaining the defendants' demurrer to the plaintiff's petition.

The ruling and judgment appealed from is affirmed.

FATZER, J., not participating.