The Honorable Paul Feliciano, Jr. State Senator, 28th District State Capitol Building, Room 452-E Topeka, Kansas 66612
Dear Senator Feliciano:
You request our opinion as to whether a person who is presently employed as the director of human resources for a state agency may be appointed to the position on the public employee relations board designated for a representative of public employees. In particular, you question the recent appointment of an individual who is presently employed as the director of human resources for the department of commerce and housing. Your letter states that this individual has been appointed by the governor to serve on the board as the representative of public employees. It is our understanding that the appointment in question was confirmed by a majority vote of the senate on February 13, 1996.
You have submitted the appointee's senate confirmation questionnaire, including a resume summarizing his employment history. In describing his responsibilities as director of human resources, the appointee states that he is "[r]esponsible for managing all phases of the agency human resources program, including recruitment/staffing, equal employment opportunity, training and staff development, employee and labor relations, personnel records and transactions, payroll processing, benefits, grievance and discipline, classification, performance review, retirement counseling, and orientation." You also note that the division of accounts and reports, department of administration, lists the individual as a supervisor for payroll purposes. We have been advised that the appointee is a classified civil service employee.
The public employee relations board (PERB) is responsible for deciding controversies brought before it regarding prohibited practices by public employers. See K.S.A. 75-4334(a). See also K.S.A. 75-4333(b) (listing prohibited practices). In addition, PERB has the authority to establish procedures for preventing improper practices by public employers and employee organizations. See K.S.A. 1995 Supp. 75-4323(e). The board consists of five members appointed by the governor, subject to confirmation by the senate as provided by K.S.A. 75-4315b. Of the five members,
 "[o]ne member shall be representative of public employers; one member shall be representative of public employees; and three members shall be representative of the public at large and hold no other public office or public employment." K.S.A. 1995 Supp. 75-4323(a).
One of the purposes of the public employee-employer relations act (PEERA), K.S.A. 75-4321 et seq., is to balance the rights of public employees and their employers. See Kansas Dep't of Admin. v. Pub.Employees Relations Bd., 257 Kan. 275, 282 (1995); K.S.A. 75-4321(b) (purpose of PEERA). The act gives public employees the right to voluntarily form, join, and participate in the activities of employee organizations for the purpose of meeting and conferring with public employers regarding grievances and conditions of employment. See K.S.A.75-4324. In requiring one member of PERB to represent public employers and one member to represent public employees, the legislature apparently sought to ensure that the respective interests of both public employees and their employers would be equally reflected in the composition of the board. Raymond Goetz, The Kansas Public Employer-Employee RelationsLaw, 28 Kan. L. Rev. 243, 251 (1980) (tripartite composition of board gives an appearance of fairness by assuring that competing interests of employees, employers, and the public all have a voice in PERB deliberations). While the statute does not explicitly require an appointee to be a "public employee" in order to serve on the board as the representative of public employees, we think it is clear that the legislature intended that result by carefully structuring the composition of the board to include only one representative each for public employees and public employers, while the other three members of the board are precluded from holding any public office or public employment.
The term "public employee" is specifically defined in various ways in the Kansas statutes. See K.S.A. 21-3110(18); 75-4316. For purposes of PEERA, however, the term "public employee" is specifically and narrowly defined by K.S.A. 75-4322(a):
"Definitions. As used in this act:
 "(a) `Public employee' means any person employed by any public agency, except those persons classed as supervisory employees, professional employees of school districts, . . . elected and management officials, and confidential employees." K.S.A. 75-4322(a) (emphasis added).
As we understand your inquiry, you challenge the appointment on the basis that the appointee qualifies as a "supervisory employee," a term which is specifically defined as follows for purposes of PEERA:
 "`Supervisory employee' means any individual who normally performs different work from his subordinates, having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend a preponderance of such actions, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment. A memorandum of agreement may provide for a definition of `supervisory employees' as an alternative to the definition herein." K.S.A. 75-4322(b).
The definition of "supervisory employee" in PEERA was borrowed from the definition of "supervisor" in the national labor relations act,29 U.S.C. § 152(11), which reads as follows:
 "The term `supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."
See Kansas Univ. Police Officers Ass'n v. Kansas Pub. Employee RelationsBd., 16 Kan. App. 2d 438, 439 (1991) (K.S.A. 75-4322(b) was lifted from the national labor relations act and is engrafted with the federal act's definition of supervisory employees).
In Kansas University Police Officers Ass'n, the Kansas Court of Appeals upheld a PERB finding that university police officers ranked as sergeants and security officers II qualified as supervisory employees. One of the arguments advanced by the appellant was that the board had reached the opposite conclusion in other cases with respect to police sergeants. The Kansas Court of Appeals rejected this argument, noting that "the structure of a police department in Kansas City may be different than the structure of a police department at the University of Kansas."16 Kan. App. 2d at 440.
The holding of the Kansas Court of Appeals is consistent with federal caselaw interpreting the parallel definition of "supervisor" in the national labor relations act. The federal courts have consistently held that whether an individual qualifies as a supervisor as defined by the act is an issue of fact, the resolution of which depends on the particular facts and circumstances of each case. E.g., NLRB v. Joe B.Foods, Inc., 953 F.2d 287, 291, 294, 296 (7th Cir. 1992) (affirming administrative law judge's determination of supervisory status based upon highly factual analysis of duties and responsibilities); NLRB v. DixonIndus., Inc., 700 F.2d 595, 599 (10th Cir. 1983); NLRB v. Wilhow Corp.,666 F.2d 1294, 1301 (10th Cir. 1981); Walla Walla Union-Bulletin v.NLRB, 631 F.2d 609, 612, 614 (9th Cir. 1980).
 "The mere fact that an employee may give some instructions to others, or that he may command their respect, does not indicate that he must identify with the interests of the employer rather than the employees. The test must be the significance of his judgments and directions. It is precisely for this reason that the question of the effectiveness of the alleged supervisor's authority must normally be a question of fact. To put the issue in homely terms, do the other employees feel, assuming the alleged supervisor is one who reasonably respects his duties, `Here comes that so-and-so, get to work,' or is he, basically, but one of the gang who merely gives routine instructions?" Stop Shop Companies, Inc. v. NLRB, 548 F.2d 17, 19 (1st Cir. 1977).
As the statute has been interpreted by the federal courts, it is the person's specific job duties, rather than his job title or classification, that determine whether the individual qualifies as a supervisor. Joe B. Foods, 953 F.2d at 296; Phillips v. Kennedy,542 F.2d 52, 55 (8th Cir. 1976); see NLRB v. ADCO Elec., Inc., 6 F.3d 1110,1117-18 (5th Cir. 1993) (a single job classification may include both supervisory and non-supervisory employees); NLRB v. Dickerson-Chapman,Inc., 964 F.2d 493, 497 (5th Cir. 1992) (an employee's specific job title and station in the organization are not automatically controlling).
On the other hand, if an individual possesses any one of the types of authority enumerated in the federal statute, the individual may be classified as a supervisor as long as the authority involves the exercise of independent judgment. Dixon Indus., 700 F.2d at 598; Meredith Corp.v. NLRB, 679 F.2d 1332, 1335 (10th Cir. 1982); NLRB v. Corral SportswearCo., 383 F.2d 961, 963 (10th Cir. 1967), cert. denied, 390 U.S. 995,20 L.Ed.2d 94, 88 S.Ct. 1196 (1968). Whether an individual exercises independent judgment is also an issue of fact. Pacific IntermountainExpress Co. v. NLRB, 412 F.2d 1, 3-4 (10th Cir. 1969).
We note that a state employee may be excluded from PEERA's definition of "public employee" even if he or she is not within the statutory definition of "supervisory employee." In addition to supervisory employees, "elected and management officials" and "confidential employees" are expressly excluded from the definition of "public employee" for purposes of PEERA. See K.S.A. 75-4322(a). The terms are defined as follows for purposes of PEERA:
 "(c) `Confidential employee' means any employee whose unrestricted access to confidential personnel files or other information concerning the administrative operations of a public agency, or whose functional responsibilities or knowledge in connection with the issues involved in the meet and confer process would make his membership in the same employee organization as other employees incompatible with his official duties.
. . . .
 "(e) `Elected and management officials' means any elective official and any appointed officer charged by law with major administrative and management responsibilities." K.S.A. 75-4322(c), (e).
Unlike the definition of "supervisory employee," the statutory definitions set forth above do not have specific counterparts in the text of the national labor relations act. However, the federal courts have determined by judicial construction that one who may be considered a "management" employee does not qualify as an "employee" entitled to protection under that act. See, e.g., Waldau v. Merit Systems ProtectionBd., 19 F.3d 1395, 1398 (Fed. Cir. 1994) (employee can qualify as management employee and hence be excluded from act's coverage by having the actual authority to take discretionary actions or by recommending such actions for implementation by others who possess the actual authority to control employer policy) (citing NLRB v. Yeshiva Univ.,444 U.S. 672, 683, 63 L.Ed.2d 115, 100 S.Ct. 856 (1980)).
In addition, the national labor relations board has had a long-standing practice of excluding from the protections of the federal law "confidential" employees, who have been defined as persons who have access to confidential information with a "labor nexus." NLRB v.Hendricks Co. Rural Elec. Coop., 454 U.S. 170, 176-77, 189-90,70 L.Ed.2d 323, 102 S.Ct. 216 (1981); NLRB v. Case Corp., 995 F.2d 700, 705
(7th Cir. 1993) (defining confidential employees as those who assist and act in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations). The board's policy of excluding confidential employees has been endorsed and applied by the federal courts. See Prudential Ins. Co. v. NLRB,832 F.2d 857, 860 (4th Cir. 1987). By explicitly excluding "management officials" and "confidential employees" from the statutory definition of "public employee" for purposes of PEERA, we think the legislature intended to generally adopt the construction the federal courts have given the parallel definitions in the national labor relations act.
As with supervisory employees, the factual determination whether a particular employee is a "managerial" or "confidential" employee is not controlled by the specific job title of the position held, but rather depends upon a case-by-case determination of the employee's actual job responsibilities, authority, and relationship to management. Waldau,
19 F.2d at 1399 (management employee); Intermountain Rural Elec. Ass'n v.NLRB, 732 F.2d 754, 762 (10th Cir.) (confidential employee), cert.denied, 469 U.S. 932, 83 L.Ed.2d 264, 105 S.Ct. 327 (1984).
As a matter of policy, we decline to render an opinion as to whether the appointee in question is in fact a supervisory employee, a confidential employee, or a management official as those terms are defined in K.S.A. 75-4322. When a gubernatorial appointment is subject to senate confirmation, the factual determination whether the appointee meets the statutory requirements for the position properly rests with the senate. We reach this conclusion because under the Kansas constitution, the creation of various offices of government not otherwise established by the constitution, as well as the establishment of qualifications for such officers and the procedure by which they are to be appointed, are legislative functions. See Kan. const., art. 2, § 18; art. 15, § 1;Sedlak v. Dick, 256 Kan. 779, 789-92 (1995); Leek v. Theis, 217 Kan. 784,808 (1975). Pursuant to K.S.A. 1995 Supp. 75-4323, the legislature has exercised its constitutional authority by providing for the governor to appoint members of the public employee relations board, subject to senate confirmation. The particular requirements or qualifications established by law for board members operate as a limitation on the statutory power of appointment the legislature has conferred on the governor. See Leekv. Theis, 217 Kan. at 807 (legislature may restrict, by way of statute, the gubernatorial choice of an appointee by imposing explicit qualifications); Marks v. Frantz, 179 Kan. 638, 649 (1956) (same); Attorney General Opinions No. 91-20, 91-52.
As we interpret the statute, the legislature has reserved to the senate the authority to ensure, by the confirmation process, that the appointee meets the statutory requirements for appointment. See K.S.A. 75-4315b; Attorney General Opinion No. 91-20 (when appointment must be confirmed by the senate, confirmation is the final step in the appointive process). The 1995 legislature strengthened the role of the senate in the process of making appointments by amending the statutes to generally require senate confirmation before the appointee may exercise any power, duty, or function as a board member. E.g., K.S.A. 1995 Supp. 75-4323(a).
For these reasons, we think that a court of law would defer to the determination of the senate in confirming the appointee, as long as there is some evidence to support its finding on the question of whether the individual meets the statutory requirements to serve in the position to which he is appointed.
The limited information available to us concerning the specific job responsibilities of the appointee who is the subject of your inquiry is not so clear or one-sided as to preclude a reasonable difference of opinion regarding whether the individual qualifies to serve on the PERB as a representative of "public employees," as that term is defined by PEERA. Therefore, we cannot say as a matter of law that the appointee is disqualified from serving on the PERB as a representative of public employees solely on the basis that he is presently employed by a state agency as the director of human resources.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 J. Lyn Entrikin Goering Assistant Attorney General
CJS:JLM:JLEG:jm