C. M. Byrd, *Appellee*, v. W. N. Cason, et al., *Appellants*.

No. 40,028

Gerald Byrd, *Appellee*, v. W. N. Cason, et al., *Appellants*.

(298 P. 2d 301)

Opinion filed June 9, 1956.

Roetzel Jochems, of Wichita, argued the cause and *Harold R. Fatzer*, attorney general, *Robert E. Hoffman*, assistant attorney general, *Edward H. Sondker*, special assistant attorney general, and *W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes* and *Cecil E. Merkel*, all of Wichita, were with him on the briefs for the appellant.

Thomas M. Lillard, of Topeka, and *W. A. Kahrs*, of Wichita, argued the cause and *O. B. Eidson, Philip H. Lewis*, and *James W. Porter*, all of Topeka, and *Robert H. Nelson, Julian H. Zimmerman*, and *Patrick F. Kelly*, all of Wichita, were with them on the briefs for the appellees.

The opinion of the court was delivered by

Smith, C. J.: These were two actions to enjoin defendants, members of the state board of embalming from making effective an order of the board revoking the plaintiff's license to practice embalming. Judgment was for the plaintiff. Defendants have appealed.

Plaintiffs in the two cases are brothers and owners of the Byrd-Snodgrass Funeral Home, Inc., in Wichita. There was an action by each brother. Except for the plaintiff the cases were identical. They were consolidated in the court below and here the facts in the case brought by C. M. Byrd will be stated.

After stating the residence and business of plaintiff, the petition alleged the official capacity of defendants; that the board issued to plaintiff a funeral director's license; that about August 5, 1954, the funeral home issued to law enforcement officials and members of the fire department and Sedgwick county and state

police officers a covenant, a copy of which was attached to the petition, whereby the funeral home as a gesture of appreciation agreed to provide any person to whom a covenant was issued a $1,000 funeral in event the holder lost his life by accidental means while in the performance of his duty; that plaintiff received a notice from defendants, a copy of which was attached; that pursuant to such notice plaintiff appeared before the board on December 7, 1954, at which time a hearing was held; that thereafter he received a letter from the board on February 1, 1955, purporting to revoke the license of plaintiff to become effective at the close of business on February 29, 1955, and to remain in effect until June 30, 1955; that defendants had made an abortive attempt to preclude the plaintiff from taking any legal action to set aside the order of revocation by threatening plaintiff that unless he adhered to the order his license would not be renewed on July 1, 1955.

The petition then alleged that the order promulgated by the board was unreasonable, arbitrary, oppressive and discriminatory in that the issuing of the covenant in question was not a violation of G. S. 1949, 65-1722, subsection ($l$), as a matter of law; that by issuing it plaintiff did not violate that section; that defendants had placed an arbitrary, unreasonable, improper and unlawful interpretation upon the section; that the board had failed to define the acts of plaintiff, which would violate the section; that in the hearing before the board no evidence was introduced showing that the plaintiff issued the covenant in question for the purpose of securing business and no evidence that it did or would secure business as a result of issuing it; that the covenants were not a thing of value until acted upon by the recipient and the action of the defendants in revoking plaintiff's license was an abuse of discretion, unwarranted, unlawful, arbitrary, capricious and oppressive; that G. S. 1949, 65-1722 ($l$) did not prevent the assumption by a funeral director of a reasonable responsibility for his community's social and public needs; that the failure of the board to define such participation in public and charitable activities as to them was a violation of G. S. 1949, 65-1722 ($l$), was discriminatory, arbitrary, oppressive, capricious and an abuse of administrative discretion; that plaintiff would suffer irreparable damage if his license should be revoked and if the order should go into effect he would lose valuable rights without due process of law, in violation of Section 18 of the Kansas Bill of Rights and the Fourteenth

Amendment to the Constitution of The United States; that Chapter 65, Article 17, of the Statutes of Kansas made no provision for an appeal from an order such as issued here; and plaintiff had no adequate remedy at law.

The prayer was that defendants be enjoined from making effective the order revoking plaintiff's license; that pending a final adjudication they be enjoined from making such order effective and that upon trial of the case the court determine that the order was unlawfully made and void.

The notice, to which reference was made in the petition, informed the plaintiff herein of the filing of the charge and notified him to appear before the board. Exhibit "C", to which reference was made, found that plaintiff in concert with his brother had issued the bond in question to the persons named; that it was a thing of value given gratuitously to such persons for the purpose of securing of funeral business in contravention of G. S. 1949, 65-1722 ($h$) and ($l$).

The order was that plaintiff's license was revoked, such revocation to become effective at the close of business on February 28, 1955, for the balance of the current license year, ending June 30, 1955.

In their answer defendants admitted the identity of the parties, the sending of the notice and the hearing and denied certain conclusions pleaded. For further answer defendants alleged the issuance of the bond; that plaintiff made statements to a newspaper reporter elaborating on the plan, that the board found that the furnishing of the bond was in the nature of an advertising scheme for the sole purpose of securing business, contrary to G. S. 1949, 65-1722 ($l$); that the board ordered its secretary not to accept renewal fees for the year commencing July 1, 1955, because it anticipated that plaintiff might attempt to avoid the effect of the order by litigation; that the revocation was reasonable and proper and made pursuant to finding of facts supported by competent evidence; that defendants had no duty to define specific acts admitted by defendants as being prescribed by G. S. 1949, 65-1722 ($l$); that plaintiff was estopped to deny that the bonds furnished were things of value; that the giving of the covenants was not a participation in a charitable activity but the giving was a direct gratuity to private persons; and that plaintiff would not be deprived of his license without due process of law since he had a notice and hearing.

The prayer of the answer was that plaintiff be denied his injunction and that the court make an order resetting the effective date of the order revoking plaintiff's license and for such other and further relief as the court might deem proper.

At the trial it was stipulated that the evidence in the trial court should be a transcript of the evidence before the board. The trial court held the issuance of the covenants could not be held to be the furnishing of free services or the loaning of merchandise or equipment at the time of illness for the purpose of inducing future patronage nor paying directly or indirectly any money or thing of value as a commission or gratuity for the securing of business and that the order of February 12, 1955, was unreasonable, arbitrary and unlawful. The defendants were enjoined from revoking plaintiffs' licenses and from refusing to reissue their licenses for the reasons set out. The appeal is from that order.

The specifications of error were that the trial court erred in finding that plaintiff did not violate G. S. 1953 Supp., 65-1722 ($h$) and ($l$); in ruling that the order of the board dated February 1, 1955, was unreasonable, arbitrary and unlawful; and in enjoining the order.

The bond or covenant to which so much reference was made in the pleadings was denominated a covenant on its face. It was directed to all law enforcement officials and members of fire departments of Greater Wichita and Sedgwick County. It stated that as a gesture of public appreciation, in the event any member of the police or fire departments or the sheriff's office of Wichita and Sedgwick County or members of the state police serving in the Wichita districts should lose his or her life by accidental means while in the performance of his or her duty the funeral home would provide without charge a one thousand dollar funeral. It was sent to each member of the groups named.

The statute, with a violation of which plaintiff was accused, is G. S. 1953 Supp., 65-1722. It reads as follows:

"The state board of embalming may refuse to issue or to renew, or after notice and hearing, may at any time suspend or revoke any funeral director's license for any one or more of the following causes, to wit: . . . ($l$) paying, directly or indirectly, any money or other thing of value as a commission or gratuity for the securing of business . . ."

All parties concede the question to be whether the sending of the

covenant in question to the members of the groups mentioned violated the above section.

Defendants argue the trial court erred in holding the plaintiffs did not violate 1953 Supp., 65-1722, because the clear intent of the statute is that gratuities and commissions are prohibited whether granted for business secured in the past or for securing business in the future. Authorities are cited where we have held where the language is plain and unambiguous the court is not warranted in looking beyond them in search of some other legislative purpose or of expanding the meaning beyond the plain terms of the act.

We find no fault with that rule. We have difficulty, however, construing the act to mean what defendants contend. We think the terms of the statute are plain and unambiguous to mean that the giving of a commission for the purpose of obtaining some specific piece of business is forbidden. It is nowhere contended that plaintiffs had any specific business in mind when issuing this instrument. We hold the instrument is in the same category with a gift to the Red Cross or Community Chest or any other of the many worthy causes to which we all are asked to contribute. To hold the statute forbade such gifts would be altogether too unreasonable.

Plaintiffs call our attention to the fact that all the evidence before the board on the subject was that the instruments were used in consideration of the loyalty and devotion to duty and in recognition of the faithful service rendered by the members of the police force and the fire department.

It is well settled that while an administrative agency has wide discretion in determining its judgments it must not abuse its authority. (See *Capland v. Board of Dental Examiners*, 149 Kan. 352, 87 P. 2d 597.) There we said:

"It is further urged the board is an administrative agency, and as such its findings are conclusive and not open to review or interference by the courts except where fraudulent, arbitrary or in excess of its authority. (*Meffert v. Medical Board*, supra; *Richardson v. Simpson*, 88 Kan. 684, 129 Pac. 1128; *Photo Play Corporation v. Board of Review*, 102 Kan. 356, 169 Pac. 1154). That such is the established rule need not be argued. The rule has been generally applied under numerous circumstances and to the actions of all administrative bodies. (See *Union Pac. Rld. Co. v. State Tax Comm.*, 145 Kan. 715, 68 P. 2d 1, and cases therein cited.)

"We are further reminded courts are not permitted to substitute their judgment for that of administrative tribunals. There can be no quarrel concerning the correctness of that principle. (*Kansas Gas & Electric Co. v. Public*

*Service Comm.*, 122 Kan. 462, 251 Pac. 1097; *Union Pac. Rld. Co. v. State Tax Comm.*, supra, p. 726.) While courts will not be permitted to substiute their judgment for that of administrative bodies, they are nevertheless definitely charged with the solemn duty of determining whether the procedure employed in reaching that judgment, or whether the judgment itself as rendered, is unreasonable, arbitrary or oppressive, under the circumstances of each particular case. An administrative body cannot be the final judge of the reasonableness of its own orders. (*Drainage District v. Railway. Co.*, 99 Kan. 188, 161 Pac. 937; *Cities Service Gas Co. v. Riverside Drainage Dist.*, 137 Kan. 410, 414, 20 P. 2d 520.)

"It is further contended an administrative body has wide discretion in determining its judgments. That must inevitably be true by reason of the very nature of its functions. The discretion, however, cannot be abused. Discretion must actually be exercised, and that means it must be reasonably exercised in view of all and not merely some of the circumstances involved. . . ." (p. 366.)

In this case laying aside for a moment the evidence taken before the board, the board's action was simply based upon an erroneous construction of G. S. 1953 Supp., 65-1722.

The judgment of the trial court is affirmed as to both appeals.