No. 40,892

MANUEL M. MARKS, *Appellant,* v. WAYNE E. FRANTZ, EDWIN C.
CATHERS, and J. C. RUST, as members of the KANSAS STATE BOARD
OF EXAMINERS IN OPTOMETRY; and WAYNE E. FRANTZ, EDWIN C.
CATHERS and J. C. RUST, individually, *Appellees.*

(325 P. 2d 368)

48

Opinion filed May 10, 1958.

T. M. Lillard, of Topeka, argued the cause, and O. B. Eidson, Philip H. Lewis, James W. Porter, Charles S. Fisher, Jr., E. Gene McKinney and William R. Stewart, all of Topeka, were with him on the briefs for the appellant.

Wendell L. Garlinghouse, of Topeka, argued the cause, and Warren W. Shaw and William Hergenreter, both of Topeka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: Plaintiff is an optometrist. His license was revoked by the Kansas State Board of Examiners in Optometry. He brought this action to enjoin the board from enforcing its order of revocation. His petition for an injunction was denied and he has appealed.

For a proper understanding of the over-all issue and questions involved it is necessary that the background of the case be related.

The plaintiff, Dr. Manuel M. Marks, a resident of Wichita, was duly licensed to practice optometry in Kansas in July, 1949. Commencing in the spring of 1952 he conducted his practice in the Zale Jewelry Company store in Wichita. As early as May 25, 1954, a complaint was filed with the board against plaintiff charging him with a number of violations of the statutes (G. S. 1949, 65-1501, et seq.) relating to the practice of optometry. On June 10, 1954, he was served with a copy of the complaint and was advised by the board that he had ten days in which to file his answer; that he was entitled to a public hearing and an opportunity to produce testimony and to confront the witnesses against him, and that the hearing would be held in the Sedgwick County district courtroom on July 8, 1954.

On June 25, 1954, plaintiff commenced an action in the district court of Sedgwick County to have G. S. 1949, 74-1501 to 1504, creating the board of examiners in optometry, and G. S. 1949, 65-1501, et seq., providing for the examination and registration of optometrists, with amendments thereto, declared unconstitutional and void. Defendant board's demurrer to his petition, on the ground it did not state facts sufficient to constitute a cause of action, was sus-

tained. Plaintiff appealed and this court affirmed in *Marks v. Frantz,* 179 Kan. 638, 298 P. 2d 316, the effect of our decision being to uphold the validity of the statutes under attack. The opinion was filed on June 9, 1956.

Prior to the filing of the above action, and on April 16, 1953, the State of Kansas, on the relation of the attorney general, filed in this court an action in quo warranto against the Zale Jewelry Company seeking to oust that corporation from engaging in the practice of optometry. The action also sought forfeiture of Zale's charter and the appointment of a receiver. Allegations of the petition in that case will not be repeated here, and neither will we summarize the evidence heard by our commissioner. Both are to be found in this court's opinion hereinafter cited. It should be stated, however, that the entire case against Zale was based on and grew out of the business arrangement, dealings and relationship among Zale, Douglas Optical and Dr. Marks. Our commissioner found that neither Dr. Marks nor Douglas Optical had violated the laws relating to the practice of optometry; that Zale had at no time been engaged in the practice of optometry, and concluded that judgment should be entered in favor of Zale. We refused to follow the commissioner's findings and conclusions, and rendered judgment ousting Zale from the practice of optometry in this state. Our decision is found at *State, ex rel., v. Zale Jewelry Co.,* 179 Kan. 628, 298 P. 2d 283, and at page 638 of the opinion appears the following:

"At any rate, we find as a matter of fact that the relationship between defendant and Dr. Marks is that of employer and employee. Dr. Marks is practicing optometry. He is employed to do so by defendant—hence defendant is practicing optometry, which it cannot do."

. The opinion, as was the one in *Marks v. Frantz,* above, was filed on June 9, 1956.

Following the announcement of those two decisions, the board, in September, 1956, held a hearing on the complaints filed against Dr. Marks. The complaints, proceedings thereon, and the findings and order of the board, are set out in

"THE DECISION AND ORDER OF THE BOARD CANCELLING
DR. MARKS' LICENSE TO PRACTICE OPTOMETRY,"

which is attached as an appendix to, and by reference made a part of, this opinion.

The order revoking, setting aside and cancelling Dr. Marks' license was dated February 21, 1957, and on March 15, 1957, he

brought this action in the district court of Shawnee County to enjoin the board from enforcing its order. The petition alleges that the order of defendant board is an abuse of discretion, unwarranted, capricious, unreasonable, arbitrary, oppressive and discriminatory; that until the final decision in the Zale case, above, was rendered, plaintiff believed in good faith that his business arrangement with Zale was entirely proper, and that his optometry practice was being carried on in full compliance with the laws governing the practice of optometry. The prayer seeks a permanent injunction enjoining the board from enforcing its order. At the time the action was filed plaintiff was granted a temporary restraining order against the board. The trial court had before it the transcript of proceedings before the board, and in addition some further oral evidence was received. Following a full hearing the trial court, on June 24, 1957, found that the decision and order of defendant board cancelling plaintiff's license to practice optometry was not unreasonable, arbitrary and oppressive, and dissolved the restraining order and denied plaintiff's petition for a permanent injunction against the board. His motion for a new trial being overruled, plaintiff has appealed. On July 15, 1957, this court ordered that the judgment be stayed pending disposition of the appeal.

The specifications of error are that the court erred in (1) finding that the decision of the defendant board of examiners in optometry was not unreasonable, arbitrary or oppressive; (2) denying the injunction against the enforcement of the order of the board, and (3) overruling the motion for a new trial.

We first take note of the board's motion to dismiss the appeal based on a technicality with reference to the filing of a transcript of the evidence and proceedings before the trial court. We have considered the motion. Under all of the facts and circumstances, it is conceded that no one has been prejudiced. Without further discussion, the motion to dismiss is denied.

G. S. 1949, 74-1504 (amended in 1953, see same section in G. S. 1957 Supp.), provides that the board of examiners in optometry (defendant board here) is authorized, empowered and directed to grant all certificates of registration as to it shall seem just and proper and to revoke any such certificates granted for any of the causes specified in G. S. 1935, 65-1504, as amended, that is, G. S. 1949, 65-1504, 1504a, and 1504b. The three last-mentioned sections list thirteen acts which are declared to be unlawful. Because it is

desired to keep this opinion within reasonable length, those sections, together with other sections of the optometry act, will not be set out in full. Furthermore, the substance of pertinent ones is contained in the decision and findings of the board attached hereto as an appendix.

G. S. 1949, 65-1506, authorizes and empowers the board to revoke the certificate of registration of any optometrist for any one of thirteen enumerated causes, one of which is the violation of any of the provisions of the optometry act. Violations of the provisions of this section are referred to in finding 39 of the board (see appendix). G. S. 1949, 65-1509 (amended in 1951, see same section in G. S. 1957 Supp.), imposing the duty on each registered optometrist to notify the board of his location and of any change thereof, is mentioned in finding 36 of the board (see appendix). The unlawful acts mentioned in G. S. 1949, 65-1510($a$) and ($c$), are referred to in findings 37 and 38 of the board (see appendix).

In passing, it should be noted that G. S. 1949, 65-1507, provides that the revocation of any certificate of registration revoked for any of the reasons (except two, which are not pertinent here) specified in the optometry act, may be set aside upon application of the holder of such certificate at any time within six months from the date of such revocation upon proof being made to the satisfaction of the optometry board that the cause of such revocation no longer exists and that the applicant has been sufficiently punished. The record does not show that Dr. Marks ever availed himself of the procedure afforded by this statute. Instead, for reasons best known to him, he filed the instant action for an injunction to enjoin the board from enforcing its order of revocation, but it must be conceded that in so doing he was within his legal rights.

The one and only question in this case is whether, under all of the facts and circumstances, the board was justified and warranted in revoking plaintiff's license and certificate to practice optometry in Kansas. Determination of the question necessarily involves consideration of certain principles applicable to administrative bodies, such as defendant board, in hearings of this kind, and also of certain rules pertaining to appellate review of proceedings of such boards.

The license to engage in the practice of a profession such as optometry, in conformity with the laws, rules and regulations pertaining thereto, is a statutory right conferred by the state, and it is within the police power of the state to prescribe the qualifications

of one desiring to practice the profession, and also to provide for the creation of a board to determine whether an applicant for a license to practice possesses the required qualifications. It naturally follows that the state also may confer upon the same board the power and authority to revoke such license if it should thereafter be found that the license should not have been issued, or if for any reason the holder thereof, since its issuance, has become disqualified. (*Meffert v. Medical Board*, 66 Kan. 710, 72 Pac. 247, 1 L. R. A. (NS) 811, 195 U. S. 625, 49 L. Ed. 350, 25 S. Ct. 790; *Brinkley v. Hassig*, 130 Kan. 874, 289 Pac. 64 (cert. denied), 282 U. S. 800, 75 L. Ed. 720, 51 S. Ct. 39; *Board of Dental Examiners v. Bohl*, 162 Kan. 156, 174 P. 2d 998; *Marks v. Frantz*, 179 Kan. 638, 298 P. 2d 316.) An administrative body, such as defendant board, cannot be the final judge of the reasonableness of its own orders, and while courts will not be permitted to substitute their judgment for that of administrative bodies, nevertheless, they are definitely charged with the solemn duty of determining whether the procedure employed in reaching that judgment, or whether the judgment itself as rendered, is unreasonable, arbitrary or oppressive under the circumstances of each particular case. In the nature of things, an administrative body, such as defendant board, has wide discretion in determining its judgments, but such discretion cannot be abused and must actually be exercised reasonably in view of all, and not merely some, of the circumstances involved. (*Capland v. Board of Dental Examiners*, 149 Kan. 352, 87 P. 2d 597; *Byrd v. Cason*, 179 Kan. 753, 298 P. 2d 301.)

It follows, therefore, in a case such as this, that the true test of the validity of the board's action in revoking plaintiff's license to practice optometry involves not only the question whether the board's findings are supported by competent and substantial evidence, but also includes the determination whether the order of revocation was *unreasonable, arbitrary* or *oppressive* under all of the circumstances of the case.

With respect to the first proposition, but without detailing the voluminous evidence (including numerous exhibits), all of which has been read and considered, and without taking up and discussing in detail the findings of the board, which speak for themselves, we are unable to arrive at any other conclusion than that the findings are supported by competent and substantial evidence. In other

words, the record fully supports the fact that Dr. Marks was guilty of the violations as found by the board.

The further question remains—*was the order of the board revoking his license unreasonable, arbitrary or oppressive, under all of the circumstances of the case?*

In our opinion the question must be answered in the negative.

The charges preferred against Dr. Marks did not arise out of and were not based upon an "isolated instance" of professional misconduct. He was no "novice" concerning the matters, in any sense of the word. Two separate lawsuits, heretofore referred to, concerning the very matters in issue, were instituted—one by the state against Zale, and the other by Dr. Marks himself to test the constitutionality of the law under which the board was proceeding in its effort to enforce disciplinary measures against him. It is true that Dr. Marks was not a party litigant in the Zale case, and, therefore, the decision in that case may not be said to be binding on him. He concedes, however, that the evidence in that case was substantially identical to that heard by the board in this case. In the Zale case the basic question was whether defendant corporation was practicing optometry through Dr. Marks. We held that it was. Basically, the question here is essentially the same—that it to say, did the business arrangement and the various activities of Dr. Marks with Zale and Douglas Optical constitute a violation by him of the statutes in question, and, if so, was the board justified in revoking his license?

As previously stated, we think that in view of all the facts and circumstances shown, the action of the board cannot be said to have been unreasonable, arbitrary or oppressive.

In passing, we pause to note plaintiff's strenuous objections to findings 32 and 39 of the board (see appendix), in which he is branded as a person of "bad moral character." We have no doubt but that such designation is not to be construed in the ordinary acceptation and meaning of the words, that is, it is not to be construed as involving moral turpitude.

There is nothing in this record to indicate that Dr. Marks did not have a full and complete hearing. In fact, it affirmatively shows that he did, and that he was represented by able counsel throughout all of the proceedings. Realizing fully the severity and harshness of any order which revokes the license of a professional man, never-

theless, under all of the facts and circumstances of this case we are unable to say that the action of the board was unreasonable, arbitrary or oppressive. The judgment of the trial court denying an injunction against enforcement of the order is therefore affirmed.

FATZER and JACKSON, JJ., not participating.

## APPENDIX

### THE DECISION AND ORDER OF THE BOARD CANCELLING DR. MARKS' LICENSE TO PRACTICE OPTOMETRY

A hearing was had before the Kansas State Board of Examiners in Optometry at 10:00 A. M. on September 27, 1956, in Wichita, Kansas, concerning an amended complaint filed with the Board by Wendell D. Waldie and Dean L. Babb and a complaint filed with the Board by Marshall W. Crotts complaining against Dr. Manuel M. Marks.

The Board members present were Dr. Wayne E. Frantz, President, Dr. E. C. Cathers, Vice-President, and Dr. J. C. Rust, Secretary, who constitute the full membership of the Board.

The respondent, Dr. Manuel M. Marks, was present in person during the hearing and was represented by Mr. Henry Klepak, 808 Texas Bank Building, Dallas, Texas, and Mr. William H. Kahrs, Union Center Building, Wichita, Kansas.

Kansas State Board of Examiners in Optometry was represented by Wendell L. Garlinghouse, Capitol Federal Building, Topeka, Kansas.

The complainants were represented by Dale M. Bryant and Glenn J. Shanahan, Brown Building, Wichita, Kansas.

Jean Wren, a Certified Shorthand Reporter, was present throughout the entire proceedings and did take and make a full and complete record and transcript of the proceedings.

The amended complaint filed by Wendell D. Waldie and Dean L. Babb alleges:

"The said Dr. Manuel M. Marks does, and has, practiced optometry in an unethical manner.

"The said Dr. Manuel M. Marks is guilty of grossly unprofessional conduct of a nature likely to deceive or defraud the public.

"That the said Dr. Manuel M. Marks does have an arrangement with the Zale's Jewelers to collect his accounts from his patients and does have an arrangement with a Dr. Ellis Carp who is not licensed or registered to prac-

tice optometry or any of the healing arts within the State of Kansas, the exact nature of which arrangement is not known to the undersigned, but it is alleged and stated that such arrangement is unlawful and unethical on the part of the said Dr. Manuel M. Marks.

"That the said Dr. Manuel M. Marks has committed acts and things for which the optometry board might refuse to admit him as a candidate for its examination.

"That the said Dr. Manuel M. Marks has caused or permitted advertisements to be had or made in the newspapers of Wichita, Kansas, which lead the public to believe that he is employed by the Zale's Jewelers of 318 East Douglas Street, Wichita, Sedgwick County, Kansas, or that the said Zale's Jewelers are practicing optometry in the City of Wichita, Sedgwick County, Kansas, through or with the said Dr. Manuel M. Marks.

"That the said Dr. Manuel M. Marks has failed, refused, and neglected to notify the Kansas State Board of Examiners in Optometry in writing, or otherwise, of the place or places where he engages or intends to engage in the practice of optometry and has failed, refused, and neglected to notify said board of any changes in his location of practice in violation of the laws of the State of Kansas and particularly G. S. 1949, 65-1509.

"That this honorable board should revoke the certificate of registration of the said Manuel M. Marks."

## The complaint filed by Marshall W. Crotts alleges:

"The said Dr. Manuel M. Marks has violated, and is violating, the optometry laws of the State of Kansas in the following particulars, to-wit:

"1. G. S. 1949, 65-1504 (e) by practicing optometry as the employee, representative or agent of Zale Jewelry Company of Wichita, Inc., or Ellis Carp, doing business as Douglas Optical Company, or as an employee, representative or agent of both of them.

"2. G. S. 1949, 65-1504 (i) by practicing optometry in an unethical manner; by practicing optometry in association with and in conjunction with and as the agent, employee or representative of corporations and unlicensed persons; by participating and assisting in acts and conduct with corporate organizations and unlicensed persons engaged in the practice of optometry; by having an arrangement with a corporation or unlicensed individual to collect his accounts; by causing or permitting advertisements to be made in newspapers in Wichita, Kansas, which tend to deceive the public.

"3. G. S. 1949, 65-1504 (a) by advertising in a manner or form in Wichita, Kansas, and thereby in an attempt to deceive the public.

"4. G. S. 1949, 65-1506 (c) by grossly unprofessional conduct of a nature likely to deceive or defraud the public.

"5. G. S. 1949, 65-1506 (e) by employing either directly or indirectly a corporation and persons commonly known as 'cappers' or 'steerers' to obtain business.

"6. G. S. 1949, 65-1506 (h) by assisting and participating with other persons and parties in the publication of untruthful and improbable statements regarding values of optometric goods and services.

"7. G. S. 1949, 65-1506 (l) by committing acts and things for which the

State Board of Examiners in Optometry might refuse to admit a candidate to their examinations.

"8. G. S. 1949, 65-1506 (m) by violating the provisions of the optometry act of the State of Kansas.

"9. G. S. 1949, 65-1509 by failing to notify the State Board of Examiners in Optometry in writing of any changes in his location of practice.

"10. G. S. 1949, 65-1510 (a) by engaging in the practice of optometry under a name or title other than his name in that he has and does engage in such practice under the name of Zale's Jewelers or Douglas Optical, or both.

"11. G. S. 1949, 65-1510 (c) by publishing, directly or indirectly, and by circulating or causing to be circulated false and misleading statements as to values in the practice of optometry; and by advertising or causing or permitting to be advertised in a manner and 'form in an attempt to deceive the public as to values and as to the right of unlicensed persons and corporations to practice optometry in the State of Kansas; and by participating and assisting in claims of superiority over other optical practitioners.

"That the State Board of Examiners in Optometry should, for the reasons herein stated, revoke the certificate of registration and the license to practice optometry of the said Dr. Manuel M. Marks."

The Board finds that the respondent, Dr. Manuel M. Marks, was notified of the hearing upon the complaints more than ten days prior to the date thereof in accordance with G. S. 1949, 65-1507.

The respondent, Dr. Manuel M. Marks, filed an answer wherein he states:

"I. Dr. Manuel M. Marks cannot ascertain from the letters received if a hearing is to be held on the so-called amended complaint referred to in your letter of September 7, 1956, or upon the allegations as set forth in your letter of September 10, 1956.

"II. Further answering, Dr. Manuel M. Marks alleges that he has not been served with the complaint referred to in your letter of September 10, 1956, and is, therefore, without knowledge as to who the complainants are or the nature of the complaint.

"III. That the Board's letter of September 10, 1956, alleges conclusions on the part of the Kansas State Board of Examiners in Optometry, does not constitute a complaint as contemplated by the Optometric Act and has no jurisdiction to hold a hearing in respect thereto. That the said Dr. Manuel M. Marks is unable to prepare a defense to the allegations set forth in the Board's letter of September 10, 1956, for the reason that said letter does not apprise him of the manner, time or place in which he violated the various sections of the statute referred to.

"IV. In all other respects the said Dr. Manuel M. Marks specifically denies that he has in any manner violated the Optometry Law of the State of Kansas or the rules and regulations promulgated by the Kansas State Board of Examiners in Optometry."

At the commencement of the hearing and proceedings and with respect to the allegations and statements contained in the answer

of the respondent, the Board held and announced that the notices sent to Dr. Marks by the secretary of the Board were clear and unambiguous and clearly notified Dr. Marks that the amended complaint of Wendell D. Waldie and Dean L. Babb and the complaint of Marshall W. Crotts were both to be heard on September 27, 1956; that the hearing in progress was upon both the amended complaint and the new complaint; that the law does not require that the respondent be furnished a copy of the complaint, but requires that the Board mail the respondent notice of the charges against him as provided by G. S. 1949, 65-1507; that the notice and letter of September 10, 1956, notified the respondent in detail of the charges against him; that there were no conclusions nor allegations on the part of the Board in said notice and letter; that the Board itself has made no allegations and has arrived at no conclusions; and that the Board would not do so until the hearing was completed, at which time the Board would make its conclusions upon the evidence received at the hearing. The Board further announced that the respondent was to have a full and fair hearing; that the Board would proceed with the hearing; and that when the evidence on the part of the complainants was concluded, the Board would consider the application of respondent for a continuance in order to give him ample opportunity to prepare his defense and present his evidence. The Board further held and announced that neither the amended complaint nor the new complaint contain allegations that the respondent violated any rules or regulations promulgated by the Kansas State Board of Examiners in Optometry; and that the Board would consider that the respondent did deny having violated the optometry laws of the State of Kansas.

The Board then proceeded to hear and receive the evidence and testimony including that offered by Dr. Manuel M. Marks, all as shown in the record prepared by the Certified Shorthand Reporter who reported the proceedings. The hearing was concluded at 5:30 P. M. on September 28, 1956, at which time the Board took the matter under advisement and gave counsel for complainants and respondent time within which to file briefs and requested findings and conclusions.

The Board has received and considered the briefs of counsel for complainants and counsel for respondent and the requested findings and conclusions submitted by both; and the Board, after consideration of the evidence, the briefs, and requested findings and conclusions, does arrive at its own findings and conclusions as follows:

1. Dr. Manuel M. Marks took the examination of the Kansas State Board of Examiners in Optometry and was licensed to practice in Kansas in July, 1949, after having graduated from optometry college. He received Kansas license or certificate No. 821. When he received his license, he gave his address as 3910 East Elm Street, Wichita, Kansas. Later he notified the Board that he was changing his location of practice to 3112 East Douglas, Wichita, Kansas. He did practice at the last mentioned address. In April, 1952, Dr. Marks opened his office for optometric practice at 318 East Douglas Avenue, Wichita, Kansas, and was still there at the time of this hearing. Dr. Marks never notified the Board in writing of this change in location as required by G. S. 1949, 65-1509.

2. The place where he commenced to practice in April, 1952, was in the store of the Zale Jewelry Company. In the back part of the first floor of this store there is a balcony with a stairway leading to it. On the first floor the Zale Jewelry Company sells diamonds, watches, jewelry, cameras and other merchandise. On the first floor under the balcony, there is a cashier and a credit office. On the balcony Dr. Marks made his optometric examinations; and also on this balcony frames, lenses and eye glasses were dispensed and sold. There were displays of eye glasses in a show case near the head of the stairs which lead to the balcony. Originally there was a neon sign at the foot of the stairs, which read "Optical Dept." There were display windows in the front of the store, and one of these was used exclusively for the display and advertising of eye glasses. There was no sign in this window which said anything about Dr. Marks or Douglas Optical. Above the front of the store, there was a very large projecting sign. This large sign had in large letters "Zale's Jewelers." Originally this same sign had near the bottom of it a replica of a pair of eye glasses and the words "Glasses Fitted." At that time it had on it in small letters the words "Douglas Optical." These signs, both inside and out, were later changed.

3. The optical department on the balcony in the Zale's store was originally conducted by Ellis Carp, who did business under the name of "Douglas Optical." Ellis Carp lives in Dallas, Texas. He does not hold a license to practice optometry in Kansas. On February 29, 1956, a corporation was formed known as Lee Optical of Kansas, Inc.; and since that time, this corporation has been operating the "Douglas Optical" business.

4. Zale Jewelry Company of Wichita, Inc., is a Kansas corporation, but all of its stock is owned by a Texas corporation which is

known as Zale's Jewelry Company, Inc. None of the incorporators and none of the officers of the Kansas Corporation live in Kansas. All of them are residents of Dallas, Texas. The Texas Corporation has the same officers as the Kansas corporation has.

5. Dr. Manuel M. Marks, the Zale Jewelry Company and Douglas Optical all commenced doing business at 318 East Douglas in Wichita at the same time. Dr. Marks had a lease from Zale Jewelry Company, Inc., for about eight feet by twenty feet on the balcony which he used for a refracting room. Next to this was a waiting room which he used. Dr. Marks' lease started on April 1, 1952, and expired March 31, 1955. It provided for rent at the rate of $100.00 per month. Zale's agreed to service and handle his accounts and collections, receipt of money, bookkeeping and clerical work. Under the provisions of his lease Dr. Marks could not engage in the sale of lenses and glasses but was to operate as an optometrist only. There was another lease also dated April 1, 1952 by the terms of which Ellis Carp, doing business as Douglas Optical Company, leased space on the same balcony from Zale Jewelry Company of Wichita, Inc. This lease also expired on March 31, 1955. Under this lease, Douglas Optical was to pay twenty per cent (20%) of its gross sales to Zale's as rent. Also, under this lease, Zale's agreed to service and handle accounts receivable of Douglas Optical and to do collections, receive money, and do bookkeeping and clerical work. Under this lease Douglas Optical could only operate a retail store of ophthalmic products, materials and kindred merchandise, which included frames, lenses, sun glasses, magnifiers and other related products and the repair of them.

6. The arrangements which the parties pretended to make under these leases was not a bona fide agreement but was a subterfuge to evade the provisions of the Kansas Optometry Laws and to permit corporations and unlicensed persons to practice optometry in Kansas. The arrangement was a scheme whereby the parties sought to enable Zale's, Dr. Marks and Douglas Optical to commercialize the whole field of visual care. The two leases which have been mentioned and which commence and end at the same times were prepared in conjunction with each other and designed to carry out the unlawful purposes of Dr. Marks, Zale Jewelry Company of Wichita, Inc., and Douglas Optical.

7. Selwyn Leeds was the local manager of the Zale store in Wichita, but the advertising, bookkeeping and purchasing for this store was done in Dallas, Texas. Mr. Leeds hired certain employees, but

they were paid by checks which were issued in Dallas, Texas. The manager of the Zale store did not have authority to write checks.

8. Dr. Manuel M. Marks practiced optometry on the balcony in the Zale's store. He wrote prescriptions for eye glasses which were filled through Douglas Optical, also on the same balcony. The prescriptions were mailed to Dallas, where the lenses were ground, fabricated and mounted in frames. They were then returned to the Wichita store for delivery to the customers.

9. Dr. Marks not only examined eyes, but on occasions he displayed, sold and fitted frames. He handled refunds for glasses which were returned by dissatisfied customers. Near Christmas time Dr. Marks has sold jewelry on the first floor of the store.

10. During the first two years of his practice in the Zale store, Douglas Optical furnished Dr. Marks one of its employees to act as the receptionist for Dr. Marks and Douglas Optical.

11. Dr. Marks was allocated a budget for the advertising of optical goods and services. These advertisements were published in the local newspapers. Dr. Marks prohibited advertisement for prices of glasses when he first went into the Zale's store, but later, and after a complaint has been filed against him, he told Zale's that they could advertise prices or anything else that they wanted to for the sale of eye glasses.

12. The payments for eye glasses purchased on the balcony were made to the Zale's Jewelry Company. The customer was taken from the balcony to Zale's cash register on the first floor and Zale's cashier accepted the payments. Customers were told to make their checks payable to Zale's Jewelry Company. When the glasses were charged, the charge accounts were credited in the name of Zale's. Customers could and did add their optical purchases to their regular Zale's charge accounts. When a charge sale was made on the balcony, the customer was taken to Zale's credit department on the first floor, which opened the credit account. Zale's received the money which was paid by the customer and that could be done in person or could be mailed in to the Zale's Jewelry Company. Zale's personnel serviced the accounts and collected delinquent accounts and sent out notices to customers whose accounts were delinquent. These notices had only the name Zale's Jewelry Company on them.

13. In some instances Zale's Jewelry Company collected and serviced the accounts of Dr. Marks for eye examinations. Charges for

eye examinations and eye glasses were handled and collected by Zale's Jewelry Company along with sales made for cameras and other store merchandise.

14. In the Spring of 1953 after a complaint had been filed against Dr. Marks, the collections of Dr. Marks' accounts by Zale's was discontinued. Certain lawsuits had been filed. About this same time the outside sign was changed and the replica of a pair of eye glasses was removed and the words "Glasses Fitted" were removed. The inside neon sign by the stairway to the balcony was changed to read "Douglas Optical." Before these changes there were no signs or displays anywhere in the store or on the balcony which read "Dr. Marks" or "Douglas Optical." There were no signs which would tell the public and the customers that the optometric practice and the optical business was owned and operated by anyone other than Zale's.

15. Newspaper advertisements and displays in the front windows advertised, "No appointments necessary." No appointments were necessary to see Dr. Marks. Dr. Marks kept the same office hours as were kept as business hours by Zale's store. This included being open for business on Thursday and Saturday evenings. Dr. Marks opened his office when the Zale's store opened and closed his office when the Zale's store closed.

16. There were many advertisements in the local newspapers concerning eye glasses and eye care. A great many of these newspaper ads had "Zale's Jewelers" in large letters and the words "Douglas Optical—dispensing opticians" in small letters. There were many newspaper advertisements that were designed so that the reader would believe that Zale's Jewelers and Douglas Optical were practicing optometry, fitting glasses, and providing eye care.

17. The issue of the Wichita Eagle for Sunday morning, April 13, 1952, had a large ad which said, "Save on glasses. Glasses Fitted." On top of this ad was an ad concerning Dr. Manuel M. Marks, optometrist, that said "The opening of new offices located in Zale's Jewelers, 318 East Douglas." This ad gave Dr. Marks office hours which were the same as the business hours of Zale's Jewelers. This ad was charged on the books of the newspaper to "Zale Optical."

18. After Dr. Marks had been at 318 East Douglas for about a year he placed a sign on the door of his refracting room which read

"Office. Dr. M. M. Marks, Optometrist." This sign is only visible when the door is closed. At the time of the hearing this sign was painted over.

19. When Dr. Marks first moved to 318 East Douglas, he had for his refracting room the space mentioned in the lease. Later Dr. Marks was given more space for another refracting room, but his rent was not raised. Still later in June, 1954 Douglas Optical moved from the balcony and then Dr. Marks took over the whole balcony without paying any additional rent. After the end of the lease, which was March 31, 1955, Dr. Marks continued to occupy the balcony and was maintaining his office there at the time of the hearing. The arrangement for additional space for Dr. Marks was made by him with the manager of Zale's. The space used by Dr. Marks at the time of the hearing had formerly been occupied by Douglas Optical' except for the portion mentioned in the lease Dr. Marks had; and Douglas Optical had paid twenty per cent (20%) of their gross sales as rent. Dr. Marks rental was not increased above the $100.00 per month figure.

20. In June, 1954, Douglas Optical moved into a store building at 316 East Douglas next door to Zale's. At that time a large opening or doorway was made in the wall between the two stores. This opening permits access from Douglas Optical at 316 East Douglas to Zale's store at 318 East Douglas. This opening is at the foot of the stairs to the balcony in the Zale's store where Dr. Marks is located. This opening was made when Douglas Optical moved and there was no opening before that time. Douglas Optical still pays twenty per cent (20%) of its gross sales to Zale's and Zale's continues to handle the collections and bookkeeping for Douglas Optical. However, Douglas Optical has not been renting from Zale's since it moved to 316 East Douglas.

21. When Douglas moved next door, the two bottom panels of the outside sign were changed and Dr. Mark's name was placed on these panels. Dr. Marks did not pay anything for the privilege of having his name put on this sign.

22. In the beginning Douglas Optical was Ellis Carp doing business under that name. Since the corporation known as Lee Optical of Kansas, Inc., was formed on February 29, 1956, it has been carrying on the Douglas Optical business. Ellis Carp has never been licensed to practice optometry in Kansas.

23. Douglas Optical makes a report every night which is for-

warded to the home office of Lee Optical in Dallas, Texas. All of the employees are paid by checks which they receive by mail.

24. Dr. Manuel M. Marks operated his practice at the time of the hearing in the same manner as he did when he first opened his office at 318 East Douglas, Wichita, Kansas in April, 1952. He has operated it the same since April, 1952 with these exceptions: (1) his accounts receivable are handled differently since 1953; (2) some signs have been changed; (3) Douglas Optical has moved from the balcony at 318 East Douglas to 316 East Douglas and there is a large opening between 318 and 316 East Douglas.

25. Dr. Marks and his personnel directed his patients to Douglas Optical to have his prescriptions filled.

26. The personnel of Zale's Jewelry Company directed the people who came there for eye glasses to Dr. Marks.

27. When customers came to Douglas Optical for eye glasses, they were referred to Dr. Marks for an examination. Douglas Optical directed customers to Dr. Marks without first finding out whether these customers had a prescription. When these customers entered the Douglas Optical store and asked for glasses they were told that they would need a prescription and they were then directed to Dr. Marks. The Douglas Optical personnel accompanied these customers through the doorway to the stairs leading to the balcony where Dr. Marks is located. When the customers arrived at the top of the stairs, there were no introductions to the optometrist who examined the eyes of the customers. After the examination, the customers were given prescription forms which had printed on them these words, "TAKE this prescription to DOUGLAS OPTICAL." Dr. Marks and his personnel directed the people who were given prescriptions to take the prescriptions to Douglas Optical. This practice has continued even since Douglas Optical has moved to 316 East Douglas. In some instances Dr. Marks or his personnel delivered the prescription to Douglas Optical instead of having the customer do it. This was done without the request of the customer.

28. Dr. Marks furnished lenses for both eyes without an eye examination by duplicating the two lenses from a part of one broken lens.

29. Dr. Marks, in referring to himself and Douglas Optical, has said, "We fill prescriptions for a number of doctors in Wichita."

30. The newspaper advertisements, the displays and the signs outside of the store and inside of the store were designed so as to make the public believe that both optometrical and optical services could be obtained at Douglas Optical and Zale's Jewelers. People were led to believe that Zale's Jewelers and Douglas Optical were practicing optometry and that they were dealing with Zale's Jewelers and Douglas Optical for eye examinations and for the purchase of eye glasses. Both Douglas Optical and Zale's Jewelers hold themselves forth as maintaining an optometrical office and furnishing optometrical sevices by various advertisements, displays and signs. It is only through and with the knowledge, consent and participation of Dr. Marks that Douglas Optical and Zale's Jewelers were able to conduct and operate this business and enterprise.

31. The lease arrangements and the understandings between Douglas Optical, Zale's Jewelers and Dr. Marks are not bona fide. The leases and the arrangements between the parties were created and designed to give apparent validity to participation by Douglas Optical and Zale's Jewelers in the optometric practice of Dr. Marks. The lease arrangements and the manner and method of doing business created such a control, association, and participation by the parties so that Dr. Marks is in fact an agent or employee of Douglas Optical and Zale's Jewelers. The arrangements, circumstances, and methods used combine to place Dr. Marks, in his optometrical practice, under the control of corporations and unlicensed persons whose commercial interests are affected by the prescriptions issued by Dr. Marks. Dr. Marks has been serving Douglas Optical and Zale's Jewelers as an agent or employee. The optometrical practice of Dr. Marks has not been and it is not distinct and independent from the business of Douglas Optical and Zale's Jewelers, but it is all one operation. Zale's Jewelers gets twenty per cent (20%) of the gross sales of Douglas Optical and therefore, are interested in the financial success and profits of Douglas Optical. Both Zale's Jewelers and Douglas Optical profit from and are interested in the prescriptions which Douglas Optical fills and which have been issued by Dr. Marks. The more eye examinations Dr. Marks makes and the more prescriptions he issues the more business and profit comes to Douglas Optical and Zale's Jewelers. Both Douglas Optical and Zale's Jewelers profit from the practice of optometry by Dr. Marks and by obtaining patients for him.

32. Dr. Manuel M. Marks has repeatedly violated the provisions of the Kansas Optometry laws over a long period of time. These repeated and continuous violations of the law show he has a bad moral character. Therefore, he is not a person who could show satisfactory evidence of moral character and the State Board of Examiners in Optometry might refuse to admit him as a candidate to their examination.

33. Dr. Manuel M. Marks has violated the optometry laws and statutes of Kansas. Dr. Marks is guilty of violation of G. S. 1949, 65-1504 (e), by practicing optometry as the employee, representative and agent of Zale Jewelry Company and Douglas Optical.

34. Dr. Marks has violated G. S. 1949, 65-1504 (i), by practicing optometry in an unethical manner because he practiced the profession of optometry in association and conjunction with and as the employee, representative and agent of commercial interests, corporations and unlicensed persons; and because he assisted and participated in the arrangements, activities and operations of corporations and unlicensed persons pertaining to the advertisement and publication of optometrical services by advertisements, displays and signs; and because he had arrangements and associations with corporations and unlicensed persons whereby they participated in and profited from the practice of optometry by Dr. Marks.

35. Dr. Marks has violated and is guilty of the violation of G. S. 1949, 65-1504a (c), by advertising in various ways, manners and forms and by assisting, participating in, and being jointly responsible for advertisements with other persons and parties which do deceive the public.

36. Dr. Marks has violated and is guilty of the violation of G. S. 1949, 65-1509, by failing and refusing to notify the State Board of Examiners in Optometry in writing of the place or places where he is to engage or intends to engage in the practice of optometry and of changes in his location of practice.

37. Dr. Marks has violated and is guilty of the violation of G. S. 1949, 65-1510 (a), by engaging in the practice of optometry under names or titles other than his own in that he has and does engage in the practice of optometry under the name of Zale Jewelry Company, Zale's Jewelers and Douglas Optical, which are the corporate names or trade names of other persons and parties.

38. Dr. Marks has violated and is guilty of the violation of G. S.

1949, 65-1510 (*c*) by publishing, both directly and indirectly, and circulating fraudulent, false and misleading statements as to values in the practice of optometry; by advertising in various manners and forms in an attempt to deceive the public; and by claiming superiority over other optometric practitioners. Dr. Marks in association and conjunction with and as the employee, agent or representative of Zale's Jewelers and Douglas Optical has assisted, participated in, caused and has done advertising by way of newspaper ads, displays, and signs and has circulated by such means and others, statements, advertisements and claims to lead the public to believe that Zale's Jewelers and Douglas Optical are authorized to engage in and do furnish optometrical services such as eye care, fitting glasses and other things. Dr. Marks has published, both directly and indirectly, and circulated fraudulent, false and misleading statements as to values in the practice of optometry in claiming Dr. Marks, Douglas Optical and Zale's Jewelers can and do furnish eye glasses and eye care at the lowest prices in Kansas upon the easiest credit terms and that the values to be received from Dr. Marks, Douglas Optical and Zale's Jewelers in eye glasses and eye care are of greater value and are superior to that of other optometric practitioners.

39. The acts, arrangements and conduct of Dr. Manuel M. Marks constitute and provide causes and grounds for the revocation of the license or certificate of registration of Dr. Marks to practice optometry in Kansas under G. S. 1949, 65-1506 (*c*), in that the acts, arrangements and conduct of Dr. Marks constitute grossly unprofessional conduct of a nature likely to deceive or defraud the public; and 65-1506 (*e*), in that Dr. Marks has employed and engaged directly and indirectly persons in the capacity of "cappers" or "steerers" to obtain business; and 65-1506 (*h*), in that Dr. Marks has advertised and assisted and participated with other persons and parties in the advertisement of untruthful, improbable and impossible statements regarding values of optical goods and services; and 65-1506 (*l*), for causes for which the optometry board might refuse to admit a candidate to their examination, in that to be entitled to practice optometry in Kansas, a person must have a satisfactory moral character under the provisions of 65-1505; and that Dr. Marks by his violations of law shows bad moral character; and 65-1506 (*m*) in that Dr. Marks has violated and is guilty of the violation of the provisions of the optometry act or law.

40. In respondent's brief it is stated that he has negotiated for office space away from the Zale's Jewelry Company or the Douglas Optical Company. It is claimed that this is not done as an admission of having committed any of the acts for which Dr. Marks is charged. The location of practice of Dr. Marks or any optometrist is not of particular concern or significance. It is the manner of practice and the acts committed by the optometrist of which this board takes notice. Regardless of the fact Dr. Marks may move his location of practice now, the fact remains that the evidence clearly shows that he has continuously violated the optometry laws of Kansas for a period of four or five years and this is more than sufficient grounds for the board to take the action which it finds itself compelled to take considering all of the facts and circumstances.

The Board finds that any one of the foregoing findings and conclusions alone or all of them constitute grounds for the revocation of the license and certificate of Dr. Manuel M. Marks to practice optometry in the State of Kansas.

It is decided and ordered by the State Board of Examiners in Optometry that the certificate and license of Dr. Manuel M. Marks which authorizes and permits him to practice optometry in the State of Kansas be hereby revoked, set aside and cancelled.

Dated at Topeka, Kansas this 21st day of February, 1957.

KANSAS STATE BOARD OF EXAMINERS IN OPTOMETRY
By
WAYNE E. FRANTZ, O. D.
*President*
EDWIN C. CATHERS, O. D.
*Vice-President*
J. C. RUST, O. D.
*Secretary*