No. 47,555

KANSAS STATE BOARD OF NURSING, *Appellant,* v. PATRICIA JANE BURKMAN, *Appellee.*

(531 P. 2d 122)

Opinion filed January 25, 1975.

*W. J. Fitzpatrick,* of Independence, argued the cause and was on the brief for the appellant.

*Charles F. Forsyth,* of Erie, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This action stems from an order of the appellant-Kansas State Board of Nursing (hereafter referred to as the board) suspending, for a period of six months, the license of appellee to practice professional nursing.

Appellee, Patricia Jane Burkman, became a registered nurse in 1957. She practiced her profession as a licensed registered nurse through December 31, 1970, when her license for the year 1970 expired. Although she had received an application form for renewal of her license, she failed to mail an application for renewal as required by K. S. A. 65-1117, which provides the normal procedure in renewing a license, as well as the procedure for securing a renewal of a lapsed license. It reads in pertinent part as follows:

". . . Upon receipt of such application and payment of fee, the board shall verify the accuracy of the application and grant a renewal license effective January 1, and expiring the following December 31, and such renewal license shall render the holder thereof a legal practitioner of nursing for the period stated on the certificate of renewal.

"Any person who shall fail to secure a renewal license within the time specified herein may secure a renewal of his or her lapsed license by making verified application therefor on a form to be provided by the board and upon furnishing proof that the applicant is at the time of making such application competent and qualified to act as a professional or practical nurse and such additional material and information as may be required by the board, and payment to the board of a renewal fee."

Despite her failure to renew her license, appellee continued to practice as a registered nurse, serving as Director of Nurses at Neosho Memorial Hospital until August 1972 and then worked for nearly a year in the office of her husband, a licensed physician. In July 1973 appellee was apprised of the fact that a complaint had been filed with the board concerning her continued practice under a lapsed license. Appellee, by telephone, requested the board to send her a renewal application. On receipt of this application appellee filled it out and returned it together with the appropriate renewal fee to the board as contemplated in the last paragraph of K. S. A. 65-1117, above quoted. Appellee's license was not renewed and she asked for a hearing before the board. In the meantime, a complaint was filed by the board's attorney charging that appellee did not renew her license to practice nursing after it expired on December 31, 1970, and that she:

". . . did knowingly, willfully, and unlawfully practice as a professional nurse as defined by the provisions of K. S. A. 65-1113, (b) (1) and within the State of Kansas on and after the 31st day of December, 1970 after her license to practice as a professional nurse in the State of Kansas for the year 1970 had expired, and did so engage in the practice of professional nursing on and after December 31, 1970 without being licensed to do so by the Kansas State Board of Nursing, contrary to and in violation of the provisions of K. S. A. 65-1122 (b) and by reason thereof is guilty of unprofessional conduct as set forth in the provisions of K. S. A. 65-1120 (a) (6)."

On November 30, 1973, a hearing was had in which the board found:

"(1) That the respondent practiced professional nursing without a license for a long period of time, approximately 31 months in a responsible position which requires supervision of other professional personnel. In this position, she should have been aware of her own legal status, as well as those under her supervision.

"(2) That the respondent failed to assume personal responsibility for maintaining a current license as required by law."

Based upon the findings recited the board made the following orders:

"(1) That the acts of the above-quoted respondent as set forth herein constitute unprofessional conduct.

"(2) That the license of the respondent, Patricia Jane Burkman, to practice professional nursing within the State of Kansas be suspended for a period of six (6) months, beginning December 1, 1973, through May 31, 1974."

Pursuant to K. S. A. 65-1121 (a), appellee filed an application for rehearing which was denied. Thereafter, appellee appealed to the district court for review of the board's order as provided in 65-1121 (b) which reads in pertinent part:

". . . The court shall review the record of the board's proceedings of such order or decision and, in event it finds such order or decision unlawful, arbitrary or unreasonable, may vacate or set aside such order. . . ."

After hearing arguments the court set aside the board's order and directed the board to issue a license to plaintiff. In its memorandum opinion the trial court found:

"Plaintiff continued to function as a nurse during the time that her license had lapsed. There is no evidence that she willfully or intentionally failed to renew her license, and there is no contention that she was not at all times fully qualified; further, it is not charged and there is no evidence that she committed any act, either of commission or omission, that would be the basis for revocation or suspension other than failure to renew her license annually."

The court noted the limitations of its power and review under 65-1121 and Kansas decisions bearing upon the subject collected and discussed in the case of *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 436 P. 2d 828, 28 A. L. R. 3d 472. The trial court further pointed out that the grounds for revocation or suspension of a nursing license are set out in K. S. A. 65-1120 and that the only ground relied upon by the board was unprofessional conduct. The trial court's reasoning was that while the evidence in this case showed that appellee was negligent it was only carelessness in failing to renew her license and that there was no evidence that

she wilfully or intentionally failed to do so; and that such negligence had nothing to do with the performance of her duties as a nurse and, therefore, did not constitute unprofessional conduct.

Regulation of the nursing profession has been provided by statute in Kansas since 1913 (Laws of 1913, Chapter 231), but this is the first case to reach this court in which an action of the board has been challenged. While there are some differences in structure and language of the act in question and that of the licensing acts of allied professions engaged in the healing arts, we believe the general purpose of the nursing act to be essentially the same as that found by this court with respect to other licensing acts. In considering the licensing act of psychologists (K. S. A. 74-5301) in the recent case of *Morra v. State Board of Examiners of Psychologists,* 212 Kan. 103, 510 P. 2d 614, Justice Fontron speaking for the court said:

"It should be borne in mind that the underlying purpose of licensing acts of this character is to afford protection to members of the public against unscrupulous, immoral or incompetent practitioners of the healing arts and allied professions. . . ." (p. 111.)

In considering the purpose of licensing acts related to other professions engaged in the healing arts, this court has expressed a similar view with respect to doctors of medicine, (*Kansas State Board of Healing Arts v. Foote,* supra); dentists, (*Capland v. Board of Dental Examiners,* 149 Kan. 352, 87 P. 2d 597); optometrists, (*Marks v. Frantz,* 183 Kan. 47, 325 P. 2d 368); and child care homes, (*Rydd v. State Board of Health,* 202 Kan. 721, 451 P. 2d 239).

Unlike most of the licensing acts referred to, the nursing act, as we have noted, prescribes by statute the scope of judicial review of proceedings before the board. According to K. S. A. 65-1122 the tests to be applied to the board's orders on judicial review are "unlawful, arbitrary or unreasonable." The framework in which judicial determination of these tests is to be made is the same as that set forth by this court in many cases which dealt with judicial review of similar administrative bodies. In *Foote* we considered the less specific judicial review provisions of K. S. A. 65-2848. The expressions of this court in many cases involving judicial review were noted and we said:

"Rules firmly emerging from this line of authority may be summarized thus: A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, the tribunal acted fraudulently, arbitrarily or capriciously, whether the administrative order is substantially supported by evidence, and whether the tribunal's action was within the scope of its authority." (p. 450.)

In *Foote* we also observed that the business of licensing is an administrative or legislative function, as distinguished from judicial.

Also, this court has said in many cases involving judicial review of administrative orders that an administrative body such as appellant board cannot be the final judge of the reasonableness of its own orders; and while not permitted to substitute their judgment for that of the administrative body, courts are, nevertheless, charged with the solemn duty of determining whether the procedure employed in reaching the decision, or whether the decision itself as rendered was unreasonable, arbitrary, unlawful or oppressive under the circumstances of each particular case. Although an administrative body such as appellant board has wide discretion in determining its judgments, particularly in the area of licensing, such discretion cannot be abused and must actually be exercised in view of all, and not merely some, of the circumstances involved. (See, *Marks v. Frantz*, supra, and cases cited therein.)

We should further note that in reviewing a district court's judgment in such a case, this court, for the purposes of determining whether the district court observed the requirements and restrictions placed upon it, makes the same review of the action of the administrative body as does the district court. (*Morra v. State Board of Examiners of Psychologists*, supra.)

With the framework for our review thus established, we turn to the issues to be decided. The critical question is whether the appellee's negligence in failing to make application for a renewal of her license can be said to be "unprofessional conduct" the sole statutory ground of the seven enumerated in K. S. A. 65-1120, upon which the board based its order of suspension.

The gist of the charge filed against appellee is that she wilfully and knowingly practiced her profession after December 31, 1970, after her license for the year 1970 had expired and did so engage in the practice of nursing in violation of the provisions of K. S. A. 65-1122 (*b*), and by reason thereof is guilty of unprofessional conduct. The substance of the board's findings is that appellee "should have been aware of her own legal status" and that she has failed to assume personal responsibility for maintaining a current license. The board concluded that these acts constituted unprofessional conduct. The board's position appears to be that appellee's failure to be aware of her own legal status is the equivalent of intentional and deliberate practice of nursing without a license, rather than merely negligence. The trial court found to the contrary and we

are constrained to agree. A finding that appellee should have been "aware" of her legal status does not rise to the generally accepted concept of wilful conduct. While wilful has been said to be a word of many meanings depending on the context in which it is used, it generally connotates proceeding from a conscious motion of the will—an act as being designed or intentional as opposed to one accidental or involuntary. (Black's Law Dictionary [4th Ed.]) In *Anderson, Administrator v. White*, 210 Kan. 18, 499 P. 2d 1056, this court said:

". . . Willful conduct is action indicating a design, purpose or intent on the part of a person to do wrong or to cause an injury to another. . . ." (p. 19.)

In considering wilful, as used in the workmen's compensation act, in *Bersch v. Morris & Co.*, 106 Kan. 800, 189 Pac. 934, this court said:

". . . the word 'willful,' as used in the statute, includes the element of intractableness, the headstrong disposition to act by the rule of contradiction. Such is a general and popular signification of the term." (p. 804.)

We are unable to construe the board's findings as amounting to wilfulness on the part of appellee. This leads to the question—does appellee's negligence in her record keeping with respect to her license amount to unprofessional conduct? The nursing act does not define unprofessional conduct as does the healing arts act (K. S. A. 65-2837), nor does it specify failure to renew a license as a ground for suspension of a license as provided in K. S. A. 65-2836 (*j*) of the healing arts act. Instead of specifying failure to pay annual renewal fees as a ground for suspension, as in the healing arts act, the nursing act, in the last paragraph of 65-1117, specifically provides procedure for the reinstatement of a license which has lapsed because of failure to renew within the time specified. The omission or the failure to renew a license as one of the grounds for suspension enumerated in K. S. A. 65-1120, coupled with the specific provisions for renewal of a lapsed license in 65-1117, and the labeling, as a misdemeanor, the practice of nursing without a license in 65-1122, leads to the conclusion that the legislature did not intend that the negligent failure to renew be treated as a ground for suspension. If the legislature had intended that the failure to perform the clerical function of renewing a license should constitute unprofessional conduct it could have easily structured the nursing act to precisely reflect this intent. Likewise, if the legislature had intended

such failure to constitute a ground for suspension it could have so provided as it did in the healing arts act.

Our holding herein is not to be construed as restricting the board's considerable leeway in formulating standards of conduct for members of the profession in measuring unprofessional conduct. The five members of the board are required to be licensed professional nurses, with five years experience in their profession (K. S. A. 1974 Supp. 74-1106 [b]). It is to be expected the legislature would intend to vest in a board made up of experienced members of the profession a certain amount of leeway in formulating standards of professional conduct relating to competency, proficiency and responsibility in the practice of the profession. Although the board was authorized to examine the qualifications and competency of appellee when considering her application for renewal of her lapsed license, no question was raised in this regard.

The board argues the trial court erred in failing to adopt the definition of unprofessional conduct set forth in *Foote:*

"'"Unprofessional conduct" is conduct which violates those standards of professional behavior which through professional experience have become established, by the consensus of the expert opinion of the members, as reasonably necessary for the protection of the public interest.'" (p. 454.) (Quotation from *Reyburn v. Minnesota State Board of Optometry,* 247 Minn. 520, 78 N. W. 2d 351 [pp. 523-534].)

In support of its position in this regard, the board argues that a nurse who practices without renewing her license is guilty of conduct that is likely to jeopardize the interest of the public and is, therefore, guilty of unprofessional conduct.

In *Foote* the state board of healing arts sought to revoke the license of Dr. Foote to practice medicine, not because of clerical error he might have made in failing to renew it, but, rather, because he had negligently and incompetently handled a number of surgery cases. The thrust of the *Foote* decision is that it is the function of the board of healing arts to protect the public against incompetent medical practitioners. We think it inappropriate to construe *Foote* as giving the board, in the instant case, authority under the nursing act to preclude appellee from practicing her profession simply because she had been negligent in her record keeping. There is no evidence to establish that appellee was unprofessional in any way about the practice of nursing.

Finally, the board asserts that it was error for the trial court to substitute its opinion for that of the board. On this point this court

has spoken in precise language. In *Kansas State Board of Healing Arts v. Foote,* supra, we held:

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority." (Syl. ¶ 1.)

See, also, *Marks v. Frantz,* supra; *Hukle v. City of Kansas City,* 212 Kan. 627, 512 P. 2d 457; and *Moora v. State Board of Examiners of Psychologists,* supra.

We reaffirm the above quoted standards of judicial review, but this is not a substitution of judgment case. The trial court, as a matter of law, based upon the undisputed facts and within the context of the nursing act determined that the appellee's failure to renew her license was something less than unprofessional conduct, *i. e.,* merely negligence in a clerical matter which was unrelated to the practice of nursing in her professional capacity.

The judgment is affirmed.

FROMME, J., dissenting.